ROYAL INDEMNITY COMPANY, Appellant, *v.* PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK, Respondent.

First Department, December 31, 1934.

*Charles H. Tuttle* of counsel [*Saul S. Myers* with him on the brief; *Barnett Cohen*, attorney], for the appellant.

*Harold B. Elgar* of counsel [*Irving I. Goldsmith* and *Monroe H. Collenburg* with him on the brief; *Joseph L. Roesch*, attorney], for the respondent.

MARTIN, J. The plaintiff seeks to reform a reinsurance agreement and as reformed to enforce its terms against the defendant.

Prior to the trial, the parties hereto, for the purpose of avoiding the necessity of proving matters not affecting the merits of the real controversy, entered into a stipulation setting forth the following facts: On or about March 11, 1926, Stewart Franklin Corporation issued 300 five-year six per cent gold notes, each in the amount of $1,000; attached to each note were ten interest coupons providing for semi-annual payments of thirty dollars as interest on the note on February fifteenth and August fifteenth during the years for which the notes were issued. Each of the gold notes contained as part thereof a guaranty executed by the plaintiff. Subsequent to March 11, 1926, the notes were sold to various persons, firms or corporations who thereafter became and remained the lawful owners thereof.

Between the 15th day of August, 1927, and the 13th of April, 1931, the plaintiff became liable to and did pay upon the surrender of the interest coupons at the times, in the amounts and to the lawful owners, as set forth in Schedule " 1 " attached to the stipulation, the sum of thirty dollars for each of said coupons, the payments being in full settlement of all claims and demands of the owners against the plaintiff for the payment of interest upon the gold notes by reason of or arising out of the guaranties of the plaintiff. Between February 24, 1931, and April 13, 1931, the plaintiff became liable to and did pay upon the surrender of the gold notes, at the times, in the amounts and to the lawful owners thereof as set forth in Schedule " 2 " attached to the stipulation the principal amount of $1,000 for each gold note, the payment being in full settlement and discharge of all claims and demands of the owners against the plaintiff by reason of or arising out of the guaranties of the plaintiff as aforesaid.

Reinsurance agreements having been entered into by the plaintiff with various companies, including the defendant, and plaintiff having paid the entire sum due under the guaranty of the gold notes, this action was brought to reform the reinsurance agreement and to recover judgment from the defendant in the sum of $92,935.17 for its failure to perform the agreement as reformed. By amendment of the amended complaint the plaintiff seeks to recover $101,356.92 as the defendant's share of the liability.

The plaintiff alleged that in addition to expending the sum of $372,000 for interest and the principal of the gold notes, plaintiff paid $6,411.23 in expense and disbursements in connection with the claims and became liable for counsel fees in the sum of $7,500.

The amended complaint is based on the defendant's written contract of reinsurance dated March 11, 1926, and attached to the complaint. This contract of reinsurance sets forth that the

primary risk is $300,000 of gold notes issued to the various holders by the Stewart-Franklin Corporation and contains the heading " Amount of Reinsurance $75,000," and then sets forth that the plaintiff applied to the defendant for reinsurance to the extent of one-fourth of any sum or sums which plaintiff shall become liable to pay and shall pay under the bond. The one-fourth was the proportion that $75,000 bears to $300,000. It is then set forth that the defendant agreed to pay one-fourth of any sum or sums which the plaintiff became liable to pay or should pay under the bond and a like proportion of all expenses, costs and counsel fees incurred by the plaintiff. The following paragraph sets forth the terms of the contract with reference to reinsurance: " It is further agreed as follows: The Reinsurer shall not be liable hereunder to the Royal for a greater sum than Seventy-five thousand & 00/100 Dollars ($75,000.00) and the said proportion of all the aforesaid expenses, costs and counsel fees."

The contract also contained a clause that: " During the continuance of this reinsurance the Royal shall always retain a liability upon said Bond, of not less than One Hundred Sixty-Two Thousand Five Hundred & 00/100 Dollars ($162,500.00)."

The reformation sought by plaintiff was with respect to the amount of liability of the Royal. The plaintiff claims that the agreement actually made was that the Royal should retain only $100,000 of the total and not $162,500. Claiming that the failure to correctly set forth the true amount was due to a scrivener's mistake or other inadvertence in the insertion of the typewritten portion of the agreement, and that as reduced to writing it did not embody the actual terms and conditions agreed upon, the plaintiff asked that the agreement be reformed by striking out the words and figures " One Hundred Sixty Two Thousand Five Hundred & 00/100 ($162,500.00) Dollars " and inserting instead therein the following: " One Hundred Thousand & 00/100 ($100,000.00) Dollars." The proof warranted that change in the contract.

The defendant also contended that the written agreement of reinsurance did not embody the true terms thereof. The parties differed, however, with regard to the respects in which the agreement did not represent the true understanding.

The evidence disclosed that on January 28, 1926, plaintiff represented to the defendant that the plaintiff was to guarantee said issue of notes of the Franklin-Kellum Company and was to receive as general security for its obligations under said guaranty a second mortgage of $150,000 on an apartment house in Garden City, Long Island, owned by the Franklin-Kellum Company, subject to

a first mortgage of $400,000 and was also to receive a mortgage on unimproved property also owned by Franklin-Kellum Company, which had been appraised by the firm of Pease & Elliman at $254,000, subject to a first mortgage of $97,000; and in addition, one Col. E. A. Hamilton was to give plaintiff a personal statement in writing that he had a net worth of at least $100,000 and was also to sign a personal indemnity and collateral agreement; the first mortgage of $400,000 was to be reduced to $350,000 in five years and the $300,000 note issue was to be reduced at the end of the second year at the rate of $50,000 per year; and in addition, Col. Hamilton was to pledge with the plaintiff a policy of insurance upon his life in the face amount of $100,000, and the plaintiff was to retain $100,000 of the risk.

The defendant, relying upon the representations so made that the plaintiff would retain $100,000 of the risk, agreed with the plaintiff that it would take $50,000 of reinsurance, provided, however, that the plaintiff retained $100,000 as coinsurer and reinsured $125,000 in addition to its $100,000 retention and the $50,000 acceptance of the defendant and the defendant further agreed that if the last $25,000 was not reinsured, it would also take the last $25,000 in addition to the said $50,000.

The evidence further disclosed that defendant's representative agreed with plaintiff's representative that only in the event that the conditions specified were fulfilled would the defendant take $75,000 reinsurance; that defendant, relying upon plaintiff's representations that the conditions reserved to be performed by plaintiff had been fully carried out and completed, thereupon on April 4, 1926, signed a reinsurance agreement, dated March 11, 1926, wherein and whereby it accepted reinsurance of plaintiff's risk under the $300,000 guaranty to an amount up to $75,000 and a proportionate amount of expenses, costs and counsel fees.

The defendant says it thereafter learned that the representations so made were untrue. Upon learning the facts, it disclaimed liability under the reinsurance agreement with the plaintiff and tendered back the amount of the premium it had received and stated that it elected to rescind said reinsurance agreement.

At no time did the defendant waive the condition precedent that plaintiff obtain other reinsurance of $125,000 over and above the plaintiff's own retention of $100,000 and the amount of the reinsurance accepted by the defendant; and the defendant at no time waived the condition precedent that plaintiff obtain a life insurance policy on the life of Col. Edgar A. Hamilton in the amount of $100,000.

The appellant contends that the judgment should be reversed because oral testimony was permitted to show what the defendant asserted were the true terms of the agreement. It was competent to show that the plaintiff induced the defendant to agree to the reinsurance by misrepresenting the facts and in agreeing that certain conditions precedent had been carried out or would be fulfilled before the defendant was to be bound by the terms of the contract.

The law on the subject appears to be well settled by a number of carefully considered cases.

In *Savage Realty Co., Inc.,* v. *Lust* (203 App. Div. 55) the court said: "It is now well settled that parol evidence is admissible to show conditions relative to the delivery or taking effect of a written contract, as that it shall only become effective upon certain conditions or contingencies, for this is not an oral contradiction or variation of the written instrument, but goes to the very existence of the contract and tends to show that no valid and effective contract ever existed."

In *Corn* v. *Bergmann* (145 App. Div. 218) the court stated: "Parol evidence tending to show that a writing is delivered under certain conditions which have not been complied with, is admissible." (See, also, *Grannis* v. *Stevens*, 216 N. Y. 583, 587; *Smith* v. *Dotterweich*, 200 id. 299; *Thomas* v. *Scutt*, 127 id. 133.)

In *Bergin* v. *Anderson* (215 App. Div. 832) the Appellate Division, Second Department, said: "Notwithstanding the plaintiff's admission of the execution of the agreement mentioned in the answer, plaintiff was entitled to show the conditions upon which the agreement was executed and delivered." (See *Schonberger* v. *Culbertson*, 231 App. Div. 257; *Savage Realty Co., Inc.,* v. *Lust, supra; Hechinger* v. *Ulacia*, 194 App. Div. 330, 333.)

The evidence warranted the conclusions that defendant was induced to enter into the contract of reinsurance by reason of plaintiff's failure to disclose material facts in connection with the insurance policy on the life of Col. Hamilton, the amount of the other reinsurance and the securities accepted as collateral in lieu of reinsurance. The plaintiff, therefore, cannot recover against the defendant on the alleged insurance agreement which is the basis of this action, because the plaintiff failed to fulfill the conditions precedent under said agreement to the defendant's incurring any liability thereunder. The defendant is, therefore, entitled to a rescission of its contract of reinsurance.

The defendant made the payments to plaintiff above enumerated under a mistake of fact. They were made because of plaintiff's misrepresentation of material facts and the concealment of material

facts. Defendant is, therefore, entitled to recover from the plaintiff the said payments so made by it with interest.

The judgment should be affirmed, with costs.

O'MALLEY, TOWNLEY and GLENNON, JJ., concur; FINCH, P. J., dissents.

FINCH, P. J. (dissenting). I dissent and vote to reverse and direct judgment for plaintiff upon the ground that the evidence adduced by defendant in support of the alleged parol agreement relied upon as a defense to the action, clearly violates the parol evidence rule, and was improperly admitted. Further, upon the ground that said alleged parol agreement is not established by the evidence, but, upon the contrary, the existence of any such agreement is negatived by the great weight of evidence.

The plaintiff sued to reform an agreement of reinsurance, and to recover upon the agreement as so reformed. The defendant conceded that there had been a mutual mistake and that the agreement should be reformed as requested by plaintiff. The contract, as reformed, provided that defendant should reinsure plaintiff for $75,000 in connection with the guaranty by the latter of a series of gold notes aggregating $300,000.

The defendant, upon its part, sought reformation of the reinsurance agreement so as to change the amount of its possible liability to $50,000 instead of $75,000, and in addition set up a number of affirmative defenses, and the further plea that the contract was induced by certain alleged fraudulent representations and concealments, by reason whereof defendant claimed to be absolved of all indebtedness to plaintiff pursuant to the agreement.

The case of the plaintiff was *prima facie* established by the formal proof, and the trial centered upon the counterclaim and affirmative defenses. These the court sustained and granted judgment dismissing the complaint and in favor of defendant upon its counterclaim for $2,791.58, which amount defendant claimed to have paid to plaintiff in mistake of its obligation under the contract. The gist of the basis of the decision of the learned court is to be found in the tenth finding of fact, which recites: " That relying upon the representations made by the plaintiff to the defendant as specified in finding of fact 6, and provided the plaintiff retained $100,000 of the risk, defendant agreed with plaintiff that it would take $50,000 of reinsurance and, provided the plaintiff retained $100,000 as co-reinsurer and reinsured $125,000 in addition to its $100,000 retention and the $50,000 acceptance of the defendant, defendant further agreed that if the last $25,000 was not reinsured, it would also take the last $25,000 in addition to the said $50,000."

The written contract between the parties contains none of the aforesaid conditions. Proof thereof was predicated upon testimony of an alleged conversation between defendant's superintendent and an alleged representative of the plaintiff deceased long prior to the trial. This evidence clearly violates the parol evidence rule. (*Ruppert* v. *Singhi*, 243 N. Y. 156; *Mitchill* v. *Lath*, 247 id. 377.)

In addition to a violation of the parol evidence rule as aforesaid, a further error of law was committed in admitting in evidence, over objection of the plaintiff, a written memorandum which McCrea testified he had made at the time of the aforesaid conversation, notwithstanding it was not even claimed to have been exhibited to plaintiff's deceased alleged representative or its contents disclosed to him. To admit, under these circumstances, a memorandum corroborative of McCrea's version of the alleged conversation, would be an opening of the door to fraud. As was well said in *Meacham* v. *Pell* (51 Barb. 65): " It is indispensable to the admission in evidence of a memorandum made by a witness at the time of the making of an alleged agreement, that it be shown the witness has no recollection of the matters stated therein, independent of the written paper. If he has such recollection, the evidence is inadmissible.

" Where a witness testifies fully to an interview between the parties, at which an agreement was entered into, a memorandum of the terms of such agreement, made by him at the time, is not admissible to corroborate the witness.

" A party to an action should not be permitted to give in evidence a memorandum made by himself, to prove the terms of a contract between him and his adversary, which has been made by him privately, and never shown to the other party. Such a rule of evidence would open a door to frauds of the worst character."

Not only was the aforesaid evidence inadmissible for the reason above stated, but it is contradicted by the records of both parties and, among others, by the following outstanding factual considerations:

(1) Defendant's aforesaid representative, McCrea, testified that he had no conversations with any one concerning the risk until after he had signed the reinsurance contract. Thereafter, McCrea and Hoen, as representatives of the reinsurers, took charge of and managed the matter without any disclaimer of liability until subsequent to the loss.

(2) Defendant's original answer is inconsistent with the conditions alleged in its amended answer and asserted upon the trial. Still another and different version was set forth in defendant's bill of particulars.

(3) The undated written memorandum which McCrea testified he made of the aforesaid alleged conversation with plaintiff's deceased representative contained no reference to any retention by plaintiff, reinsurance by others or contingency as to the amount of defendant's reinsurance.

(4) A second dated memorandum, also made by McCrea at the time of the alleged conversation, and brought out under conditions indicating an intention on the part of defendant to suppress it, tends to show an unqualified acceptance by defendant for $50,000 of reinsurance.

(5) An entry of the transaction in defendant's own acceptance register discovered upon cross-examination of defendant under circumstances indicating an intention to suppress knowledge of its existence, shows that long prior to the signing of the reinsurance contract the defendant had recorded an unconditional acceptance of $75,000. Other correspondence between the parties and records of the defendant indicate a recognition by the defendant at all times prior to the loss of an obligation based upon one-fourth of $300,000, or $75,000, instead of one-sixth, or $50,000, in accordance with defendant's theory upon the trial.

The above-mentioned points but touch some of the high lights of the many inconsistencies in and contradictions of the evidence adduced by the defendant. Upon this record it is difficult to understand the conclusion arrived at upon the facts. Such conclusion can in no event be sustained as a matter of law, because, as noted, the evidence of the alleged oral agreement was inadmissible.

The judgment should be reversed, and judgment directed in favor of plaintiff as demanded in the complaint.

Judgment affirmed, with costs.