75 N.Y.2d 295 (1990)
Sumitomo Marine & Fire Insurance Co., Ltd.  U.S. Branch, Respondent,
v.
Cologne Reinsurance Company of America et al., Defendants, and Buffalo Reinsurance Company et al., Appellants.
Court of Appeals of the State of New York.
Argued January 3, 1990.
Decided February 13, 1990.
Thomas R. Newman and Barry Bassis for appellants.
John H. Haley for respondent.
Chief Judge WACHTLER and Judges SIMONS, TITONE and HANCOCK, JR., concur; Judges ALEXANDER and BELLACOSA taking no part.
*298 KAYE, J.
This appeal calls upon us to resolve a question of reinsurance law  a field in which differences have often been settled by handshakes and umpires, and pertinent precedents of this court are few in number.
Plaintiff (Sumitomo Marine & Fire Insurance Company), an insurer, underwrote a one-year commercial property insurance policy for Auburn Steel Company, a steel mill located in upstate New York. The policy became effective on February 1, 1983, and provided "all-risks" coverage against loss of or damage to property from any hazard save those specifically excluded. Like steel mills generally, Auburn used a small quantity of cesium, a radioactive material, in the device that measured the factory's output. Loss resulting from radioactive contamination had been covered by Auburn's prior all-risks policy.
Sumitomo had not previously provided insurance to a steel mill, but agreed to provide Auburn the same coverage as had its predecessor, Factory Mutual Company. In issuing the insurance, Sumitomo therefore supplemented a Chubb policy form it was using, which listed "nuclear" among the loss or damage exclusions, by "Amendment No. 3," providing coverage for "Sudden and accidental Radioactive Contamination, including resultant radiation damage * * * from material used or stored or from processes conducted on the described premises."
Sumitomo then sought to reinsure the Auburn policy. Sumitomo's offer to purchase reinsurance was made by telex to various potential reinsurers through its agent, Thomas A. Greene & Company. The offering telex noted that Auburn was a steel mill, that its prior insurer was Factory Mutual, and that an inspection report was available, but the telex contained *299 no explicit reference to radioactive contamination coverage. On February 9, 1983, defendant Philadelphia Reinsurance Corporation telexed its acceptance of a percentage of the Auburn insurance risk, and on February 10, defendant Buffalo Reinsurance Company telephoned its acceptance. Seven other facultative reinsurers accepted as well. (The other reinsurers are not parties to this appeal.)
Barely two weeks later, on February 21, 1983, scrap metal at the Auburn plant was contaminated with cobalt-60, a radioactive material, causing a shutdown of the facility and a business interruption loss covered by the Sumitomo policy. Defendant Buffalo was notified of the loss during February 1983; and while the precise date was not fixed, Philadelphia undisputedly received notification by October 1983. Meanwhile, Greene had sent a cover note to the reinsurers confirming their acceptance. After notice of Auburn's loss, defendants signed the note  without question or reservation  signifying acceptance.
Finally, in late 1983 copies of the actual policy that Sumitomo had issued to Auburn  including Amendment No. 3, covering radioactive contamination  were delivered to all the reinsurers. As is apparently customary, only after receiving the original policy did defendants issue their formal certificates of reinsurance. Philadelphia's certificate is dated December 28, 1983, and Buffalo's February 1, 1984. Each certificate obliged the reinsurer to "follow the fortunes" of its reinsured, except as coverage was expressly excluded, and each contained or referred to a nuclear incident exclusion clause.[1]
*300 Sumitomo settled with Auburn, and requested payment from its reinsurers. After defendants refused, Sumitomo commenced this action. As in the letter refusing payment, in their answer to the complaint defendants contended only that the loss was excluded by virtue of the nuclear incident exclusion clause contained in the reinsurance certificates. However, in their summary judgment motion, made in October 1987 upon the completion of extensive discovery, defendants raised the additional contention  pressed on this appeal  that they would not have entered into a reinsurance agreement had Sumitomo disclosed that the primary policy covered incidental radioactive contamination. Defendants argue that because of Sumitomo's alleged failure to disclose what defendants contend was a material risk, they are now entitled to rescission of the reinsurance agreement. In connection with this claim, defendants assert that the agreement was complete on February 9 or 10, 1983 when they accepted Sumitomo's telexed offer, and that later issuance of formal certificates was merely "ministerial" and without legal significance. Alternatively, *301 defendants argue that their exclusion clause precluded coverage of the Auburn accident.
Reversing the trial court's award of summary judgment to defendants,[2] the Appellate Division unanimously rejected defendants' first claim, and held that in the circumstances defendants were obliged to determine the actual scope of coverage before issuing their formal certificates of reinsurance. A divided court went on to hold that the reinsurance certificate covered an incidental radioactive loss, and it remanded for a factual determination as to whether the risk here was considered primary or incidental. While we agree with the Appellate Division's reading of the exclusion clause and affirm that court's order, we do so on somewhat different grounds.
We begin our analysis with certain fundamental propositions in the law of reinsurance.
Reinsurance is a means by which insurers reallocate their risk. In general terms, it is "the insurance of one insurer (the `reinsured') by another insurer (the `reinsurer') by means of which the reinsured is indemnified for loss under insurance policies issued by the reinsured to the public." (Kramer, Nature of Reinsurance, reprinted in Reinsurance, at 5 [Strain ed 1980].) The agreement at issue in this case is "facultative" reinsurance. As contrasted with "treaty" reinsurance, which involves an ongoing agreement between two insurance companies binding one in advance to cede and the other to accept certain reinsurance business pursuant to its provisions, facultative reinsurance involves the offer[3] of a portion of a particular risk to one or more potential reinsurers, who are then free to accept or reject the risk in whole or part (see generally, Thompson, Reinsurance, at 75 [4th ed 1966]).
Typically, the details of the risk proposed to be ceded by the *302 reinsured are circulated to possible reinsurers, who in turn indicate their willingness to accept some portion of the risk, and to be bound by their agreement to do so. In the London market  the Mecca of the reinsurance world  this was traditionally accomplished by the ceding company or its broker preparing a slip with brief details of the risk to be placed; the slip was then taken to prospective reinsurers who, if prepared to accept, initialed it, indicating the proportion of the risk they wanted. Under normal circumstances, the initialing of the slip constituted a binding agreement. With electronic advances, the slip has been replaced by an exchange of telephone calls or telexes, as in this case. Delivery of the original insurance policy to the reinsurer and issuance by the latter of a formal certificate of reinsurance may not occur until much later, and indeed are technically unnecessary for a binding agreement (Butler & Merkin, Reinsurance Law, at A5.1-02).
It is this swift, seemingly almost casual process of contract formation that has given rise to the controversy before us. Defendants claim that at the time of the binder they were never informed of the allegedly unusual radiation coverage Sumitomo provided Auburn; Sumitomo as vehemently asserts that defendants knew or should have known that such coverage would be provided to Auburn, as it generally was to steel mills (who necessarily use cesium) and as it actually had been by Factory Mutual.
While that factual difference remains unresolved, it is unnecessary to the disposition of this appeal. What instead becomes determinative are defendants' acts subsequent to the binder, including their issuance of the reinsurance certificates.
Turning first to the question of contract interpretation, we agree with the Appellate Division majority's reading of defendants' clause. Unlike paragraphs 3 and 4 of the exclusion  both of which refer back to prior paragraphs  paragraph 5 unqualifiedly declares that the entire exclusion is inoperative "where the nuclear exposure is not considered by the Reassured to be the primary hazard." Here, the parties are now in accord that the use of radioactive isotopes was not considered by Sumitomo to be the primary hazard. Thus, the nuclear exclusion clause, on a straightforward reading, would not preclude coverage in this case.
Contrary to defendants' claim, the natural reading of this clause is neither unusual nor absurd. Exclusion clauses commonly specify that they do not apply where the excluded *303 operations are considered incidental, with the determination left to the reinsured (see, Salm, Reinsurance Contract Wording, reprinted in Reinsurance, at 79, 82 [Strain ed 1980]). Indeed, defendants' suggestion that paragraph 5 can apply only where the direct policy does not name radioactive contamination as a covered hazard  in other words, that the reinsurance includes this risk only when the original policy does not  seems the more strained construction. We therefore conclude that the plain language of defendants' own clause should prevail.
Accordingly, by the terms of their reinsurance certificates, defendants agreed to indemnify Sumitomo for the very type of damage at issue in this case. It remains only to address defendants' contention that  even though their clause permits the same coverage that Sumitomo extended to Auburn  they never would have agreed to the contract in the first instance had they known that Sumitomo had provided coverage for incidental nuclear damage.
The premise underlying defendants' contention that their agreement to reinsure the Sumitomo policy is voidable is that at the outset Sumitomo was required to disclose to the reinsurers its extension of coverage to incidental nuclear damage. A reinsured is obliged to disclose to potential reinsurers all "material facts" concerning the original risk, and failure to do so generally entitles the reinsurer to rescission of its contract (see, Royal Indemn. Co. v Preferred Acc. Ins. Co., 243 App Div 297, 301, affd 268 N.Y. 566). But the reinsured ordinarily has no obligation to disclose the terms upon which insurance has been granted where those terms are generally to be found in policies of that nature, for the reinsurer ought to be aware of such standard terms (Butler & Merkin, Reinsurance Law, at A6.4-04 [1988]; see also, Carter, Reinsurance, at 125-126 [1979]). Where the reinsured has offered extended coverage or an unusual term, however, that is a material fact which, if not disclosed, would render a reinsurance agreement voidable. (Id.) Sumitomo asserts that coverage of incidental nuclear damage is routine in insurance of steel mills; defendants claim that the coverage is highly unusual.
Whether or not such coverage is in fact standard for steel mills generally, defendants in effect waived any claim that they would not have entered into this reinsurance agreement had they been aware of Amendment No. 3.
*304 While defendants' claim may be doubted on its merits (even their own clause does not exclude the coverage), the crucial point is that defendants were fully aware of Auburn's loss before signing the cover note, and fully aware of Amendment No. 3 before they issued their certificates of reinsurance.[4] Nonetheless, during the entire duration of the policy and for a considerable time thereafter  even well after they had denied payment and answered the complaint in this litigation  defendants failed to seek to void the agreement but treated it as fully valid.
Defendants correctly argue that issuance of a formal certificate of reinsurance is in a sense a technical or "ministerial" act. However, defendants not only failed to take steps to assert their alleged right to rescission within a reasonable time, as they were required to do (Carter, Reinsurance ch 4, at 128, [1979]), but also affirmatively treated the agreement as a valid one well beyond the point where they had the most complete possible notice of the coverage undertaken by Sumitomo. Under these circumstances, they have waived that claim (see, 16C Appelman, Insurance Law and Practice § 9254, at 348; Zeldman v Mutual Life Ins. Co., 269 App Div 53).
Having so concluded, we need not and do not decide the broader issue of a reinsured's duty of disclosure where the reinsurer's independent limitations on its exposure coincide with an allegedly unusual liability undertaken by the reinsured (see, Butler & Merkin, Reinsurance Law, at A6.4-05  A6.4-06, [1988] [citing British cases]).
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.[5]
Order affirmed, etc.
NOTES
[1] The clause, apparently a standard one, provides as follows:

"1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.
"2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:
"I. Nuclear reactor power plants including all auxiliary property on the site, or
"II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and `critical facilities' as such, or
"III. Installations for fabricating complete fuel elements or for processing substantial quantities of `special nuclear material,' and for reprocessing, salvaging, chemically separating, storing or disposing of `spent' nuclear fuel or waste materials, or
"IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.
"3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate
"(a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or
"(b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on or after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.
"4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.
"5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard."
[2] The trial court had granted defendants summary judgment on the ground that Amendment No. 3 modified the "original contract" of direct insurance, and that the reinsurers could not be bound by that modification absent their agreement in writing. However  despite a record as complete (in defendants' words) "as it would be after trial"  defendants raise no issue of fact regarding Sumitomo's proof that from the outset the parties' intention was to continue Auburn's coverage and that the agreement took the form it did because Sumitomo did not have its own policy forms that would have been suitable.
[3] For purposes of this discussion, we need not determine which is technically the "offer" and which the "acceptance," in classical contract terms  a subject that appears to have generated disagreement (see, Butler & Merkin, Reinsurance Law, at A5.1-01 [1988]).
[4] The Appellate Division unanimously concluded that issuance of the reinsurance certificates alone barred defendants' claim: "Under these circumstances, it was incumbent upon respondents to determine the scope of the coverage in the direct insurance policy before issuing their formal contract underwriting the risk of such coverage." (149 AD2d, at 378; see also, id., at 380 [Wallach, J., dissenting].)
[5] Defendants' concession before us that the nuclear coverage was considered incidental, not primary, resolves the open factual issue identified by the Appellate Division. However, this court is without jurisdiction to take the logical next step and grant summary judgment to Sumitomo, a nonappealing party (see, Hecht v City of New York, 60 N.Y.2d 57; see also, Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 N.Y.2d 106).