OPINION OF THE COURT
 

 Bellacosa, J.
 

 Intervenor Superintendent of Insurance, as Liquidator, and plaintiff Michigan National Bank-Oakland respectively appeal pursuant to leave granted by this Court. The order of the Appellate Division affirmed a judgment of Supreme Court, granting the motions of defendants reinsurers for summary judgment. Their affirmative defense of fraud was upheld and rescission of their reinsurance treaties with the insolvent insurer was allowed.
 

 These appeals, in the context of a procedurally complex reinsurance series of disputes, raise core issues whether (1) statements made by a State Liquidator’s outside counsel in a sworn affidavit in a related action, incorporating supporting documentation and evidence, constitute informal judicial admissions; (2) failure of an insolvent insurer to disclose its insolvency to a reinsurer may constitute fraud in the inducement; and (3) such an omission may constitute a valid defense to claims for enforcement of the reinsurance contracts brought by the Liquidator and the beneficiary of a surety bond, thus, justifying rescission of the reinsurance contracts.
 

 L
 

 On July 16, 1985, Union Indemnity Insurance Company of New York, Inc. (Union), a subsidiary of Frank B. Hall & Co.,
 
 *100
 
 Inc. (Hall), was placed into liquidation by Supreme Court, based in part upon the finding that it was insolvent. Under Insurance Law § 7419, the court prohibited any action against the insolvent estate, represented by the Liquidator.
 

 On September 20, 1985, Michigan National Bank-Oakland (Michigan) the beneficiary of a $2 million surety bond issued to Ginso Investment Corp. by Union, brought an action on the bond against the reinsurers (defendants-respondents American Centennial Insurance Co.
 
 et al.).
 
 The Liquidator intervened in that action, contending that the reinsurance proceeds were assets of insolvent Union and should be paid to the Liquidator directly for the benefit ultimately of all policyholders. The re-insurers counterclaimed that the reinsurance agreements had been procured by fraud in that (1) Hall operated Union for improper purposes, and (2) Union failed to disclose its insolvency.
 

 Thereafter, the Liquidator brought a separate action,
 
 Corcoran v Hall & Co.
 
 (the Hall action), against Union’s parent company, its affiliates, Hall and Union’s officers and directors, and Hall’s outside auditors. This action asserted mismanagement, failure to disclose Union’s insolvency, breach of fiduciary duties, violations of the Insurance Law and malpractice. Various creditors of the insolvent insurer’s estate, including the reinsurer American Centennial, also filed similar complaints against the named defendants in the Hall action, which were ultimately consolidated.
 

 The defendants in the Hall action moved to dismiss for failure of the Liquidator to plead fraud with specificity and for lack of standing, and the Liquidator cross-moved to shift the burden of proof to the defendants. Most pertinently for this appeal, defendants’ dismissal motions in the Hall action were met by the Liquidator’s affidavits of two of its outside counsel, accompanied by supporting documentation, including affidavits drafted by Union officers and directors. These filed opposition papers recorded that the Liquidator’s complaint rested on Hall’s active participation in a scheme to defraud and the allegations were based in part on findings of the Liquidator’s investigation of Union’s business practices. These motions were denied and the Appellate Division affirmed (149 AD2d 165). In June 1989, the Liquidator and all of the defendants in the Hall action agreed to settle that dispute, subject to court approval, that is still open and pending. That matter is not before us on this appeal.
 

 
 *101
 
 In the meantime, the reinsurers in the action now appealed from moved for summary judgment, seeking rescission of their reinsurance agreements with Union. They submitted the affidavits of the Liquidator’s outside counsel in the Hall action, asserting that these proofs constituted informal judicial admissions by the Liquidator regarding Union’s fraud and failure to disclose material facts.
 

 The Liquidator opposed this motion by submitting additional and different affidavits from those that had been submitted in the Hall action. At this juncture, the Liquidator took the position through Union’s former president and its former board chairman that Union was operated as an independent insurance company separate from Hall, and through Union’s former auditor that the transactions between Hall and Union passed muster under acceptable insurance industry standards. The Liquidator argued that because these affidavits contradicted those made by outside counsel in the Hall action, the latter should not be given conclusive effect. Additionally, the Liquidator asserted that neither set of the affidavits was based upon firsthand knowledge.
 

 Justice Gammerman, who has presided over all phases of this complex matter for over 10 years, ruled on this motion in 1989 that the affidavits in the Hall action constituted informal judicial admissions. Thus, he granted the reinsurers’ motion for summary judgment and rescinded the reinsurance agreements. In concluding that the reinsurance treaties were void, the court stated that "[w]hat is evident from these admissions is that material omissions as well as misrepresentations occurred, that Union officers and directors were aware of the operations and financial condition of the company and that a conscious plan was in operation to utilize Union for Hall’s purposes and not run the corporation as an independent entity.” The court emphasized and relied upon the fact that it had been "conceded that had a reinsurer been aware of insolvency it certainly would not have underwritten the sum encompassed by reinsuring the bankrupt company.” The decision was amended to add another reinsurer to those entitled to this relief.
 

 Upon motions for renewal and reargument, the court, in 1992, essentially adhered to its grant of summary judgment based on the informal judicial admissions doctrine and documentation and the fraud finding as to Union; however, it modified to the extent of technically precluding the reinsurers’ counterclaim for rescission in the form of affirmative relief, as
 
 *102
 
 barred by the injunction contained in the order of liquidation. Nonetheless, the court functionally rescinded and deemed the reinsurance treaties unenforceable as a result of its finding that the affirmative defense of fraud was established, thus rendering them void.
 

 The central holding was reiterated in the 1992 decision that a " 'reinsured is obliged to disclose to potential reinsurers all material facts concerning the original risk, and failure to do so generally entitles the reinsurer to rescission of its contract’ ” (quoting
 
 Sumitomo Mar. & Fire Ins. Co. v Cologne Reins. Co.,
 
 75 NY2d 295, 303). The court further noted that "[s]olvency of the reinsured becomes an integral part of the risk undertaken and is a material fact that should be disclosed” (citations omitted). Agreeing with the reinsurers that liquidation principles do not deprive them of a defense of fraud against the Liquidator, the court, quoting
 
 Matter of Midland Ins. Co.
 
 (79 NY2d 253, 264-265), stated that " 'liquidation cannot place the liquidator in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation’ ” (citation omitted).
 

 The Appellate Division unanimously affirmed (200 AD2d 99). After this Court dismissed leave to appeal on nonfinality grounds (84 NY2d 1026), Supreme Court severed the Liquidator’s claim for return of reinsurance premiums and dismissed the Liquidator’s claim for recovery of reinsurance proceeds. The Appellate Division affirmed and we granted leave to appeal.
 

 The Liquidator argues that (1) the doctrine of informal judicial admissions was improperly invoked to support the admissibility of the reinsurers’ submissions, and (2) even if the reinsurers’ common-law fraud defense was proven at trial, New York’s statutory insurance liquidation scheme is exclusive and precludes the remedy of rescission "or its equivalent,” contending that the lower courts’ reliance on
 
 Midland
 
 is erroneous. Michigan, for its part, argues that (1) the judicial admissions in the Hall action were improperly admitted against it, and (2) even if Union induced the reinsurers to enter into the reinsurance treaties by fraud, that would not constitute a defense by the reinsurers to Michigan’s surety bond claims.
 

 We are not persuaded by these contentions and affirm the order of the Appellate Division. We are satisfied that the
 
 *103
 
 courts below properly allowed the doctrine of informal judicial admissions to support the reinsurers’ submissions, at least as against the Liquidator. Additionally, we conclude that an insurance company’s insolvency is a material fact that must be disclosed to a potential reinsurer and that the reinsured’s failure to do so supports the voiding of the reinsurance treaties as against both the Liquidator, who assumes the role of the insolvent insurance company, and the beneficiary, which holds a bond issued by the insolvent insurer.
 

 ¡L
 

 Informal judicial admissions are recognized as "facts incidentally admitted during the trial or in some other judicial proceeding, as in statements made by a party as a witness, or contained in a deposition, a bill of particulars, or an affidavit” (Prince, Richardson on Evidence § 8-219, at 529 [Farrell 11th ed] [citations omitted]). "A formal judicial admission in one action may become an admission in the evidentiary sense in another action, and would be classified as an informal judicial admission in the later action” (Richardson,
 
 op. cit,
 
 at 530). To be sure, they are not conclusive, though they are "evidence” of the fact or facts admitted (Richardson,
 
 op. cit.,
 
 at 530). Furthermore, "[a]n admission in a pleading in one action is admissible against the pleader in another suit, provided it is shown 'by the signature of the party, or otherwise, that the facts were inserted with his knowledge, or under his direction, and with his sanction’ ” (Richardson,
 
 op. cit.,
 
 at 530, quoting
 
 Cook v Barr,
 
 44 NY 156, 158). Additionally, as Justice Gammerman correctly noted, it is irrelevant that the admissions were made in part by counsel on behalf of the Liquidator and that they were contained in affidavits or briefs
 
 (see, Matter of Home of Histadruth Ivrith v State of New York Facilities Dev. Corp.,
 
 114 AD2d 200;
 
 Yannon v RCA Corp.,
 
 100 AD2d 966;
 
 Bellino v Bellino Constr. Co.,
 
 75 AD2d 630).
 

 The admissions made by counsel for the Liquidator and filed with supportive documentation in the Hall action documented that Union’s officers and directors made material omissions and misrepresentations regarding the operations and financial condition of the company and that a plan to utilize Union for Hall’s purposes was in operation — contrasted to running the corporation as an independent entity, as required by Insurance Law §§ 1507 and 1505. These facts are admissible against the Liquidator as informal judicial admissions.
 

 It would be unseemly, to say the least, to permit the Liquidator to renege on its court-submitted evidence and, in effect, to
 
 *104
 
 use quasi-official assertions as both a sword and a shield by simultaneously documenting Union’s fraud and failure to disclose its insolvency and yet later trying to deny the relevance and applicability of the same admissions and data in an action involving the reinsurers. Moreover, the Liquidator was given full and fair opportunity to rebut the nonconclusive material, attempted to do so, and failed on the record before the nisi prius court and now the appellate courts, within our respective review powers.
 

 Michigan, in its distinct posture, attempts to remove itself from the effect of these nonconclusive judicial admissions. It argues that the statements made by the Liquidator’s counsel constitute hearsay as applied to Michigan, and that the hearsay exception for admissions is inapplicable because hearsay statements, in any event, constitute admissions against only the person chargeable with the admission. Michigan further contends that it played no role in the underlying Hall action and, more specifically, never had an opportunity to cross-examine the declarants whose evidentiary submissions are being used as facts against it. Although Michigan finds itself caught in a procedural cross fire, its contentions inevitably fail under the circumstances presented here for a distinct reason. As a technical matter, the Liquidator’s statements in the Hall action were not admitted against Michigan, but as a practical matter, once the reinsurers established their fraud defense, effecting a void
 
 ab initio
 
 consequence on the reinsurance treaties, the reinsurance treaties and any obligation for proceeds of them legally disappeared under the interrelated circumstances of this case. Accordingly, the reinsurers were entitled to summary judgment against both parties making claims to reinsurance proceeds, including Michigan.
 

 ¡¡L
 

 We must now turn, to the question of whether the failure of the ceding insurance company to disclose its insolvency to the potential reinsurer constitutes fraud in the inducement. Connected to this is whether such fraud will qualify as a valid defense by the reinsurers to claims for enforcement of those treaties brought by the Liquidator and the surety bond beneficiary. The bottom line is whether rescission or its functional equivalent as part of a fraud finding is a proper remedy in such a situation.
 

 The premise of the Liquidator’s argument is that Union’s financial status during the negotiation of the reinsurance
 
 *105
 
 agreements is irrelevant and, therefore, proof of Union’s failure to disclose its insolvency does not support rescission. The Liquidator contends that a ceding insurance company’s insolvency, being a neutral factor, does not adversely affect re-insurers because it does not relate to the risk they undertake and underwrite; regardless of Union’s insolvency, the Liquidator asserts, the reinsurers remain liable to pay all losses reinsured. Additionally, the Liquidator argues that the duty of utmost good faith
 
 (uberrimae
 
 fidei) only mandates the disclosure of information, material to the reinsured risk, and since insolvency does not relate to the risk, disclosure is not required.
 

 The underlying counterpoint from the reinsurers is that their reinsurance agreements are rescindable for Union’s failure to disclose its insolvency. They emphasize that Union was acquired by Hall as a loss leader for Hall’s brokerage business, hiding the fact that Hall caused Union to write bond business not acceptable to underwriting standards. The reinsurers argue that insolvency is material and its disclosure crucial, because one way to conceal insolvency is for an insurer to simply keep writing additional premiums on bad risk situations. The reinsurers further argue that the writing of substandard and underpriced risks, which were then subsumed within the reinsurance, constitutes a material fact subject to disclosure because the reinsurers’ true risks would not be generating sufficient premiums to justify such unknown exposures. The reinsurers also contend that the reinsurer has no duty to investigate such activity because the absolute duty to fully disclose the risk insured is on the primary insurer. A violation of that duty, they argue, vitiates the reinsurance. Additionally, the re-insurers assert that had they been aware of Union’s insolvency, they would not have underwritten reinsurance for it — a circumstance relied upon by the courts below and conceded by the appellants throughout — "particularly in light of the greater responsibility imposed on reinsurers by Insurance Law § 1308 in the event the ceding insurer is liquidated, whereby the reinsurer must pay the Liquidator on reinsured claims even if the Liquidator has not yet paid the policyholder” (200 AD2d, at 105).
 

 IV.
 

 It is useful in this part of the analysis to reference the underlying fundamental structure of the specialty law of reinsurance. Reinsurance is " 'the insurance of one insurer (the "reinsured”) by another insurer (the "reinsurer”) by means of
 
 *106
 
 which the reinsured is indemnified for loss under insurance policies issued by the reinsured to the public’ ” (Kramer,
 
 The Nature of Reinsurance,
 
 reprinted in Reinsurance, at 5 [Strain ed 1980]). Essentially, it is a vehicle through which insurers distribute their insurance liabilities or risks (Kramer,
 
 op. cit.,
 
 at 6). There are two main forms of reinsurance: "facultative” and "treaty.” Facultative reinsurance is "a transaction between reinsurer and reinsured ceding company involving one specific policy,” whereby "the primary insurer voluntarily offers a portion of its risk” to the reinsurer, to which "the reinsurer is under no obligation to accept” (Clark,
 
 Facultative Reinsurance: Reinsuring Individual Policies,
 
 reprinted in Reinsurance, at 117 [Strain ed 1980]). In a treaty reinsurance relationship, there is "1) no individual risk scrutiny by the reinsurer, 2) obligatory acceptance by the reinsurer of covered business, and 3) a long-term relationship in which the reinsurer’s profitability is expected, but measured and adjusted over an extended period of time” (Clark,
 
 op. cit.,
 
 at 121). The reinsurance agreement in the present case is the treaty type, for which the duty of disclosure is broader due to the nature of the risk involved
 
 (see,
 
 Kramer,
 
 The Nature of Reinsurance,
 
 reprinted in Reinsurance, at 10 [Strain ed 1980]).
 

 The phrase
 
 uberrimae fidei
 
 and its translation, "of the utmost good faith,” has long been used to characterize the core duty accompanying reinsurance contracts
 
 (see,
 
 Kramer,
 
 op. cit.,
 
 at 9; Reinsurance, at 665 [Strain ed 1980];
 
 Sun Mut. Ins. Co. v Ocean Ins. Co.,
 
 107 US 485, 510;
 
 Christiania Gen. Ins. Corp. v Great Am. Ins. Co.,
 
 979 F2d 268, 278). Encompassed within this duty is a basic obligation of a reinsured to disclose to potential reinsurers all "material facts” regarding the original risk of loss, and failure to do so renders a reinsurance agreement voidable or rescindable
 
 (Sumitomo Mar. & Fire Ins. Co. v Cologne Reins. Co.,
 
 75 NY2d 295, 303,
 
 supra,
 
 citing
 
 Royal Indem. Co. v Preferred Acc. Ins. Co.,
 
 243 App Div 297, 301,
 
 affd
 
 268 NY 566;
 
 see, Sun Mut. Ins. Co. v Ocean Ins. Co., supra,
 
 107 US, at 510;
 
 Christiania Gen. Ins. Corp. v Great Am. Ins. Co., supra,
 
 979 F2d, at 278;
 
 see also,
 
 Kramer,
 
 The Nature of Reinsurance,
 
 reprinted in Reinsurance, at 9 [Strain ed 1980]; Ostrager and Newman, Insurance Coverage Disputes § 16.03 [a], at 710 [8th ed 1995]). Material facts are those likely to influence the decisions of underwriters; facts which, had they been revealed by the reinsured, would have either prevented a reinsurer from issuing a policy or prompted a reinsurer to issue it at a higher premium
 
 (Christiania Gen. Ins. Corp. v Great Am. Ins. Co.,
 
 
 *107
 

 supra,
 
 979 F2d, at 278, citing
 
 Merchants & Shippers Ins. Co. v St. Paul Fire & Mar. Ins. Co.,
 
 219 App Div 636, 639;
 
 see, Sun Mut. Ins. Co. v Ocean Ins. Co., supra,
 
 107 US, at 510). A reinsured need not possess a specific intent to conceal information from a reinsurer to make a contract voidable, rather "an innocent failure to disclose a material fact is sufficient” (Ostrager and Newman, Insurance Coverage Disputes § 16.03 [a], at 710 [8th ed 1995], citing
 
 Sun Mut. Ins. Co. v Ocean Ins. Co., supra,
 
 107 US, at 510). Additionally, " '[t]here is no principle of imputed knowledge of facts material to the risk that the reinsurer is asked to assume’ ” (Ostrager and Newman, Insurance Coverage Disputes § 16.03 [a], at 711 [8th ed 1995], quoting A/S
 
 Ivarans Rederei v Puerto Rico Ports Auth.,
 
 617 F2d 903, 905 [1st Cir 1980]). Rather, when a ceding insurer has knowledge of circumstances that would influence a reinsurer’s underwriting decision, in compliance with and in preservation of principles of utmost good faith, a ceding insurer is required to disclose all such circumstances (Ostrager and Newman,
 
 op. cit.,
 
 § 16.03 [a], at 711).
 

 While the general proposition that all material facts to a contract for reinsurance must be disclosed is well settled, the specific question whether insolvency constitutes a material fact in the reinsurance context is more nuanced and open. Our precedents in this more indefinite aspect of highly regulated law are sparse. Yet, this Court has applied the general principles of good faith and disclosure devolved from reinsurance jurisprudence and has resolved a related and relevant issue in
 
 Sumitomo Mar. & Fire Ins. Co. v Cologne Reins. Co.
 
 (75 NY2d 295,
 
 supra).
 
 In
 
 Sumitomo,
 
 the defendants reinsurers argued that their agreement to reinsure the plaintiff ceding insurance company, a "facultative” reinsurance agreement, was voidable at the outset based upon plaintiff’s failure to disclose to the reinsurers its extension of coverage to incidental nuclear damage. This Court stated that "[a] reinsured is obliged to disclose to potential reinsurers all 'material facts’ concerning the original risk, and failure to do so generally entitles the reinsurer to rescission of its contract”
 
 (Sumitomo Mar. & Fire Ins. Co. v Cologne Reins. Co., supra,
 
 75 NY2d, at 303 [citations omitted]). Furthermore, we held that disclosure is required "[w]here the reinsured has offered extended coverage or an unusual term * * * that is a material fact which, if not disclosed, would render a reinsurance agreement voidable”
 
 (id.,
 
 at 303). The Court’s expression there regarding the reinsured’s duty to disclose material facts finds apt application
 
 *108
 
 and transference here. Insolvency, not unlike extended coverage or an unusual term, has a potent potential impact on the reinsurers’ risk sufficient to trigger the
 
 uberrimae fidei
 
 obligation for disclosure.
 

 V.
 

 We do not accept the Liquidator’s contention that New York’s insurance liquidation scheme precludes the reinsurers’ defense of fraud and entitlement to the rescission remedy. Over 40 years ago, in
 
 Bohlinger v Zanger
 
 (306 NY 228), this Court concluded that "[liquidation does not change the situation and the liquidator should not and may not be placed in a better position than the company he takes over and demand that which it is not owed”
 
 (id.,
 
 at 234). More recently, in
 
 Matter of Midland Ins. Co.
 
 (79 NY2d 253,
 
 supra),
 
 pointedly relied upon by the Appellate Division in resolving this very case now on appeal, this Court held that a reinsurer could offset the proceeds it owed an insolvent ceding insurer under a reinsurance contract against amounts the insolvent insurer owed the reinsurer for premiums under a separate and distinct contract. The Court rejected the defendant’s argument that the liquidation order created a special category of obligation regarding the reinsurance proceeds, which ran directly to the Liquidator and not to the insolvent insurer. The Court reasoned that "liquidation cannot place the liquidator in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation”
 
 (Matter of Midland, supra,
 
 79 NY2d, at 264-265, citing
 
 Bohlinger v Zanger,
 
 306 NY 228, 234 [citations omitted]).
 

 The Liquidator argues, nevertheless, that the lower courts overextended this Court’s holding in
 
 Midland
 
 because the liquidation scheme’s statutory right of offset is fundamentally different from "the non-statutory remedy of rescission” or its functional equivalent. We are satisfied the Appellate Division correctly reasoned that "[w]hile
 
 Midland
 
 involved an interpretation of the statutory defense of setoff (Insurance Law § 7427), as opposed to the common-law defense of fraud, that decision should be extended to apply to the situation at bar in light of the policy of preserving preliquidation rights inasmuch as the defense of fraud in the inducement and the equitable rescission of a contract due to fraud are declarations that the contract was void
 
 ab
 
 initio” (200 AD2d,
 
 supra,
 
 at 107, citing
 
 Stephens v American Home Assur. Co.,
 
 811 F Supp 937, 946-948
 
 *109
 
 [SD NY 1993],
 
 vacated and remanded on other grounds
 
 70 F3d 10 [2d Cir 1995], citing
 
 Christiania Gen. Ins. Corp. v Great Am. Ins. Co.,
 
 979 F2d 268, 278,
 
 supra; Eastern Dist. Piece Dye Works v Travelers Ins. Co.,
 
 234 NY 441).
 

 Notably, the District Court in
 
 Stephens v American Home Assur. Co.
 
 (811 F Supp 937 [SD NY 1993],
 
 supra, vacated and remanded on other grounds
 
 70 F3d 10 [2d Cir 1995]), recently addressed the issue of whether the insolvency of an insurance company renders the remedy of rescission or the defense of fraud or both unavailable as a matter of New York law (811 F Supp, at 947). It relied on
 
 Sumitomo, Midland
 
 and the instant case as decided up to the point at the Appellate Division stage to conclude that fraud and rescission were not foreclosed. The court stated that "[t]he general rule is that a liquidator of an insurance company 'stands in the shoes’ of the insolvent, gaining no greater rights than the insolvent had”
 
 (Stephens, supra,
 
 811 F Supp, at 947, citing
 
 Bohlinger v Zanger,
 
 306 NY 228,
 
 supra).
 
 The court reasoned that "absent specific law to the contrary, 'the reinsurers are free to assert any affirmative defenses, such as fraud, that they may have had against the [insolvent company]”
 
 (Stephens, supra,
 
 811 F Supp, at 947, quoting
 
 Matter of Union Indem. Ins. Co.,
 
 Sup Ct, NY County, Oct. 28, 1992, Gammerman, J., index No. 41292-85). Analyzing
 
 Midland,
 
 the court stated that "[w]hile
 
 Midland
 
 was an interpretation of a statutory defense of setoff,
 
 see,
 
 N. Y. Ins. Law § 7427, as opposed to the common law defense of fraud or remedy of rescission, the analysis of the Court of Appeals is distinctly relevant”
 
 (Stephens, supra,
 
 811 F Supp, at 947). Finally, the District Court concluded that the "New York courts have been strongly supportive of preserving rights which existed prior to liquidation proceedings [and] [a]s illustrated by
 
 Union Indemnity,
 
 the defense of fraud and the remedy of rescission for fraudulent inducement are included in this protection,” regardless of insolvency proceedings
 
 (Stephens, supra,
 
 811 F Supp, at 948).
 

 Additionally, the reinsurers’ defense of fraud was properly asserted against Michigan. Although Insurance Law § 4118 (a) (1) (A) requires the reinsurance agreement between the insurers to provide Michigan with a direct right of action against the reinsurers, nonetheless, as the Appellate Division correctly concluded, applying general principles of contract law, "inasmuch as the reinsurance treaties relied upon have been found to be void
 
 ah initio
 
 as the result of Union Indemnity’s fraud, Michigan, as an insured stands in no better position
 
 *110
 
 than its now defunct insurer Union Indemnity” (200 AD2d 99, 108,
 
 supra).
 

 In sum, the reinsurers’ defense of fraud in the inducement is properly upheld along with the voiding of the reinsurance treaties in this case. Insolvency is a material fact, of which disclosure for reinsurance is required under governing precedents and principles, including
 
 uberrimae fidei.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith and Ciparick concur; Judge Levine taking no part.
 

 Order affirmed, with costs.