**GERLING GLOBAL REINSURANCE COMPANY—U.S. BRANCH,**
Plaintiff–Appellee,

v.

**ACE PROPERTY & CASUALTY INSURANCE COMPANY, as successor of Central National Insurance Company of Omaha, Defendant–Appellant.**

**Docket No. 01–9353.**

United States Court of Appeals, Second Circuit.

Aug. 1, 2002.

Daryn E. Rush, Esq., White & Williams LLP, Philadelphia, PA; Thomas A. Allen, Esq., on the brief, for Appellant.

Edward K. Lenci, Esq., Wilker & Lenci, New York, NY; P. Jay Wilker, Esq., on the brief, for Appellee.

Present JOSEPH M. McLAUGHLIN, DENNIS JACOBS and PIERRE N. LEVAL, Circuit Judges.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the district court's decision be and it hereby is AFFIRMED.

In July 1982, plaintiff-appellee Gerling Global Reinsurance Company ("Gerling") issued two facultative reinsurance certificates ("the certificates") effective June 1, 1982 to defendant-appellant ACE Property and Casualty Co. ("ACE"),[1] whereby Gerling agreed to reinsure portions of insurance policies ACE had issued to A.P. Green Refractories Co. ("A.P.Green"). Prior to obtaining the certificates, ACE represented to Gerling that A.P. Green had no losses over $10,000 in the past five years.

Both certificates contain "follow the fortunes" clauses, which provide that "the liability of [Gerling] . . . shall follow that of [ACE]," and "following form" clauses, which provide that Gerling's liability "shall be subject in all respects to the terms and conditions of [ACE's] policy" with A.P. Green. The certificates also contain arbitration clauses, which provide: "Should an

---

1. Gerling issued the certificates to Central National Insurance Company of Omaha, which was succeeded in interest by CIGNA Property and Casualty Companies, which was in turn succeeded in interest by ACE. For simplicity's sake, however, we refer to all three entities as "ACE."

irreconcilable difference of opinion arise as to the interpretation of this Certificate … as a condition precedent of any right of action hereunder, such difference shall be submitted to arbitration."

In November 1982, Gerling learned that A.P. Green was named as a defendant in numerous lawsuits seeking damages for asbestos exposure (the "asbestos litigation"). Gerling cancelled the certificates effective January 1983 and returned a proportionate share of premiums paid by ACE. It did not seek rescission of the certificates for the period covering June 1982 to January 1983, believing ACE was unaware of the asbestos litigation when ACE solicited reinsurance from Gerling.

In the mid–1990's, A.P. Green incurred millions of dollars of liability resulting from the asbestos litigation. After an initial coverage dispute, ACE agreed to indemnify A.P. Green for a portion of A.P. Green's liability. ACE then sought indemnity from Gerling under the certificates. Gerling agreed to indemnify ACE and made an initial payment of $326,894.46. However, Gerling conditioned this initial payment and any future payments on its review of ACE's underwriting files.

When it reviewed the underwriting files, Gerling found, to its surprise, a letter (dated April 22, 1982—one month prior to the date ACE solicited reinsurance from Gerling) written by A.P. Green's insurance broker informing ACE's insurance underwriter that A.P. Green was named as a defendant "in asbestosis litigation for a substantial number of individuals." Forthwith, Gerling informed ACE that it desired to rescind the reinsurance certificates for ACE's failure to disclose a material fact in violation of its duty of *uberrima fides,* i.e., the duty of utmost good faith implied in all reinsurance contracts. ACE refused to rescind the certificates and demanded Ger-

ling pay the balance of its indemnity payments under the certificates.

Thereafter, Gerling filed an action in the United States District Court for the Southern District of New York (Rakoff, *J.*), seeking a declaratory judgment that the certificates are void *ab initio* because of ACE's failure to disclose the asbestos litigation. Gerling also sought the return of its initial payment partially indemnifying ACE for the asbestos litigation.

ACE issued a demand for arbitration on the grounds that: (1) the certificates' "follow the fortunes" and "following form" clauses require Gerling to provide indemnity for ACE's asbestos litigation liability; and (2) a determination of Gerling's obligation to pay requires interpretation of those clauses. Additionally, ACE filed a motion to dismiss Gerling's complaint or stay the action pending arbitration. The district court denied ACE's motion, reasoning that the parties' dispute concerns the certificates' formation, not interpretation of the certificates' terms, and therefore does not fall within the arbitration clause's narrow ambit. ACE now appeals.

We review *de novo* the district court's denial of ACE's motion to dismiss Gerling's complaint or to stay the action pending arbitration. *Mediterranean Shipping Co. S.A. Geneva v. POL–Atlantic,* 229 F.3d 397, 402 (2d Cir.2000).

At the outset, we reject ACE's argument that the certificates' arbitration clause is "broad" and that, therefore, a presumption of arbitrability arises. Here, the certificates' arbitration clause lacks the all-encompassing language requisite to a broad arbitration clause. *See, e.g., Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 224–26 (2d Cir.2001) (providing examples of broad arbitration clauses). Indeed, the clause is narrow, applying only to "irreconcilable difference[s] of opinion" that concern "the

interpretation" of the certificates. Faced with a narrow arbitration clause, we must determine whether the dispute is over an issue that is on its face within the clause's scope, or over a collateral issue beyond the clause's purview. *Id.* at 224.

As explained above, Gerling contends ACE violated its duty of utmost good faith when it failed to disclose the asbestos litigation. "The relationship between a reinsurer and a reinsured is one of utmost good faith, requiring the reinsured to disclose to the reinsurer all facts that materially affect the risk of which it is aware and of which the reinsurer itself has no reason to be aware." *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.,* 979 F.2d 268, 278 (2d Cir.1992) (citations omitted); *see also* Cal. Ins.Code § 622 (1993); *Northwestern Mut. Fire Ass'n v. Union Mut. Fire Ins. Co.,* 144 F.2d 274, 276 (9th Cir.1944).[2] "[T]he failure to disclose need not be fraudulent or even intentional," *Christiania Gen. Ins. Corp.,* 979 F.2d at 279; rather, "an innocent failure to disclose a material fact is sufficient." *Michigan Nat'l Bank–Oakland v. Am. Centennial Ins. Co. (In re Liquidation of Union Indem. Ins. Co.),* 89 N.Y.2d 94, 651 N.Y.S.2d 383, 674 N.E.2d 313, 320 (1996) (citation omitted). Non-disclosure of such material facts "renders a reinsurance agreement voidable or rescindable." *Id.* at 319.

Thus, Gerling's claim raises doubt as to the certificates' very formation; if ACE knew about material information concerning the risk to be undertaken, but failed to disclose such information, then the certificates are voidable. Resolution of this claim depends on what ACE knew and when ACE knew it, not on interpretation of the "follow the fortunes" and "following form" clauses, or any other provision in the certificates. Accordingly, we hold that the parties' dispute is outside the purview of the certificates' narrow arbitration clause.

We have considered ACE's remaining arguments and find them to be without merit.

Accordingly, the district court's denial of ACE's motion to dismiss the complaint or stay the action pending arbitration is AFFIRMED.

---

**2.** The parties quibble over whether New York or California law applies to their dispute. However, they have not identified, and we have not found, any substantive difference between New York and California law regarding the doctrine of *uberrima fides.*