[760 NYS2d 438]

MORGENTHOW & LATHAM et al., Respondents, v BANK OF NEW YORK COMPANY, INC., et al., Appellants.

First Department, May 20, 2003

**APPEARANCES OF COUNSEL**

*Mark E. Herlihy* and *Harold M. Hoffman* for respondents.

*Richard H. Klapper* of counsel (*John L. Warden, Marc De Leeuw* and *Kieran B. Morrow* on the brief; *Sullivan & Cromwell LLP,* attorneys), for appellants.

## OPINION OF THE COURT

GONZALEZ, J.

This appeal by defendant The Bank of New York (BNY) from Supreme Court's denial of its CPLR 3211 (a) (1) motion to dismiss requires us to determine whether certain judicial admissions by plaintiffs' agent in a pending federal action constitute "documentary evidence" within the meaning of CPLR 3211 (a) (1), and if so, whether that evidence flatly contradicts plaintiffs' allegations of justifiable reliance in support of their instant fraud claim. We conclude that Supreme Court properly considered the allegations of plaintiffs' agent in the federal action, but also find that it underestimated the contradiction between plaintiffs' fraud claim and their agent's prior allegations. Accordingly, we reverse and dismiss plaintiffs' fraud claim as against BNY for lack of justifiable reliance.

In 1993, plaintiffs Morgenthow & Latham, New York International Insurance Group and Oriental XL Funds (plaintiffs), three Cayman Islands trusts, jointly invested $40 million through the purchase of 20,000 shares of stock of defendant Joint Stock Bank Inkombank (Inkombank), formerly a leading Russian bank. The stock purchase agreements provided that in return for their investment, plaintiffs were guaranteed a 12% annual return in the form of dividends and the right, after 36 months, to redeem the Inkombank securities.

In 1996, the Central Bank of Russia (CBR) conducted an audit of Inkombank and issued a highly critical report containing numerous warnings concerning Inkombank's financial position. Plaintiffs allege that they were so alarmed by the CBR Report that they decided to exercise their contractual right to redeem their Inkombank shares. To this end, in August 1996 plaintiffs wrote a letter to Inkombank's President, Vladimir Vinogradov, demanding redemption of the shares at the original purchase price. However, plaintiffs further allege that their redemption demand was met by a "concerted effort" on the part of Inkombank and representatives of defendant The Bank of New York, Inkombank's correspondent bank in the United States, to convince plaintiffs to withdraw their redemption demand. Plaintiffs allege that representatives of BNY misrepresented Inkombank's financial condition and that as a result of these misrepresentations, plaintiffs withdrew

their demand to redeem their Inkombank shares. Thereafter, in October 1998, the CBR revoked Inkombank's license to conduct banking business and Inkombank was ordered liquidated. Plaintiffs lost their entire investment.

Plaintiffs commenced the instant action in October 2000, alleging a single cause of action for fraud against BNY and Inkombank. According to plaintiffs' complaint, representatives of BNY: (i) knowingly and falsely misrepresented to plaintiffs that Inkombank was a sound, reputable and reliable financial institution, and (ii) concealed from plaintiffs that Inkombank's senior management was actively engaged in unlawful and criminal activities, including the theft of Inkombank's assets and money laundering. Plaintiffs' complaint further alleged that they justifiably relied on BNY's false assurances based on BNY's status and credibility as a highly respected United States financial institution, and, consequently, agreed to withdraw their redemption demand.

BNY moved to dismiss the single cause of action for fraud pursuant to CPLR 3211. BNY argued that allegations made by plaintiffs' "attorney-in-fact" and "trustee" in a separate consolidated action pending in Federal District Court (*Zeltser v Joint Stock Bank Inkombank*, 95 Civ 0796 [SD NY]; *Pelaez v Regal V. World Wide Holdings*, 95 Civ 3410 [SD NY] [federal action]) constituted binding judicial admissions that are irreconcilable with plaintiff's allegations of fraud by BNY in the instant case.[1]

The federal action was commenced in April 1995 by Foreign Investors Portfolio Management, Inc. (FIPM) against Inkombank and others. The amended complaint in that action identified FIPM as "trustee" for Inkombank's major shareholders, including the three plaintiffs in this case. FIPM asserted causes of action for fraud and breach of contract relating in part to the same $40 million stock purchase investment that is the subject of the instant action. The amended complaint contained no allegations of wrongdoing against BNY.

In the federal action, FIPM alleged that "[i]n or about the latter part of 1994, Inkombank defendants * * * openly admitted to [FIPM and its attorneys] that they never intended to honor Inkombank's obligations to FIPM with respect to the $40 million stock purchase." The amended complaint further alleged that the "Inkombank defendants no longer made a secret

---

1. The federal action was initially commenced in a New York State court but was removed to the Federal District Court.

of their links to Russian organized crime * * * [and] used this aspect in their attempts to intimidate [FIPM's principals and attorneys]." Finally, it alleged that after FIPM's attorney threatened legal action if Inkombank did not honor its obligations to FIPM, the Inkombank defendants resorted to bribery attempts, threats and murder to cover up their fraudulent scheme.

BNY argued that the allegations in the federal action demonstrate that plaintiffs or their agent had notice of Inkombank's unlawful activity and intent not to honor its obligations in 1994, two years before the alleged misrepresentations by BNY in 1996 which now form the basis of their fraud claim against BNY. Thus, BNY asserted that FIPM's allegations in the federal action defeat plaintiffs' claim of justifiable reliance in this action.

In opposition, plaintiffs countered that FIPM's allegations in the federal action are not binding on them, since they were not parties to that action; that those allegations do not undermine their claim of reliance in the instant case because the federal complaint did not mention the redemption of plaintiffs' Inkombank shares at a fixed price; and that Inkombank had "recanted" its intent not to honor its obligations to FIPM in a 1996 letter to plaintiffs, thereby demonstrating, or at least raising an issue of fact, as to the reasonableness of plaintiffs' reliance on BNY's statements.

In the order appealed from, the IAS court, assuming the truth of the allegations in the pleading, denied BNY's motion to dismiss. The court ruled that "the allegations in the Federal complaint, while constituting evidence which tends to belie plaintiffs' assertions that they justifiably relied upon BNY's statements, do not flatly contradict those statements." Further, the court clearly indicated that BNY's arguments were "more appropriate" on a summary judgment motion.

On appeal, BNY argues that plaintiffs' fraud allegations against BNY are irreconcilable with their trustee's prior allegations in the federal action, and that consequently the complaint should be dismissed. Additionally, BNY asserts that plaintiffs have failed to plead any material misrepresentations, justifiable reliance or injury to support their fraud claim. We agree with BNY that the allegations made by FIPM in the federal action are binding on plaintiffs and negate any claim of justifiable reliance on BNY's alleged misrepresentations.

Initially, we reject plaintiffs' argument that the IAS court should not have considered the allegations in the federal

complaint on this CPLR 3211 motion to dismiss. Generally, on a motion to dismiss made pursuant to CPLR 3211, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

However, "[i]n those circumstances where the legal conclusions and factual allegations are flatly contradicted by documentary evidence, they are not presumed to be true or accorded every favorable inference (*Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81, *affd* 94 NY2d 659; *Kliebert v McKoan*, 228 AD2d 232, *lv denied* 89 NY2d 802), and the criterion becomes 'whether the proponent of the pleading has a cause of action, not whether he has stated one' (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275; *see also, Leon v Martinez, supra*, at 88)." (*Ark Bryant Park Corp. v Bryant Park Restoration Corp.*, 285 AD2d 143, 150 [2001].) On a motion to dismiss pursuant to CPLR 3211 (a) (1), "a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Leon v Martinez*, 84 NY2d at 88; *see also Teitler v Max J. Pollack & Sons*, 288 AD2d 302 [2001]; *Jaslow v Pep Boys—Manny, Moe & Jack*, 279 AD2d 611, 612 [2001]).

Plaintiffs argue that FIPM's complaint in the federal action does not constitute "documentary evidence" within the meaning of CPLR 3211 (a) (1). In their view, the subdivision applies only to documentary evidence that "readily establishes that an essential element of a claim cannot be maintained as a matter of law," such as a defense based on the terms of a written contract or proof of payment to rebut a claim on a debt. In contrast, plaintiffs argue that their justifiable reliance in this case is a fact-driven inquiry that cannot be negated by factual allegations in a pleading by a different entity in a separate lawsuit. We disagree.

The documentary evidence relied upon by BNY constitutes informal judicial admissions by plaintiffs' "attorney-in-fact" in another action (*see Matter of Union Indem. Ins. Co.*, 89 NY2d 94, 103 [1996] [admissions made by counsel for liquidator in separate action constitute informal judicial admissions that were binding on liquidator in instant action]). As the Court of Appeals explained in *Matter of Union Indem. Ins.* (89 NY2d at 103):

"Informal judicial admissions are recognized as 'facts incidentally admitted during the trial or in some other judicial proceeding, as in statements made by a party as a witness, or contained in a deposition, a bill of particulars, or an affidavit' (Prince, Richardson on Evidence § 8-219, at 529 [Farrell 11th ed] [citations omitted]). 'A formal judicial admission in one action may become an admission in the evidentiary sense in another action, and would be classified as an informal judicial admission in the later action' (Richardson, *op. cit.*, at 530). To be sure, they are not conclusive, though they are 'evidence' of the fact or facts admitted (Richardson, *op. cit.*, at 530). Furthermore, '[a]n admission in a pleading in one action is admissible against the pleader in another suit, provided it is shown "by the signature of the party, or otherwise, that the facts were inserted with his knowledge, or under his direction, and with his sanction"' (Richardson, *op. cit.*, at 530, quoting *Cook v Barr*, 44 NY 156, 158)."

We reject plaintiffs' attempt to avoid the effect of these admissions by arguing that they were not parties to the federal action. "In addition to being a declaration of a party, an informal judicial admission may be found to be a declaration of a 'representative or predecessor in interest of a party' (Prince, Richardson on Evidence § 8-201, at 510 [Farrell 11th ed]; *see Matter of Union Indem. Ins. Co.*, 89 NY2d 94, 103)." (*Tamily v General Contr. Corp.*, 270 AD2d 751, 753 [2000].) In the federal action, FIPM alleged that it was "attorney-in-fact" and "trustee" to various Inkombank shareholders, three of whom were identified as plaintiffs herein. The amended complaint further stated that "FIPM transacted business with Inkombank both in its own name and as a trustee of an express business trust created by Inkombank's shareholders, who are also the principals of FIPM." It further alleged that although the $40 million stock purchase agreements at issue here were negotiated by "FIPM principals," the actual purchasers of the Inkombank stock were the three plaintiffs in this case, who were "represented by FIPM 'as agent.'"

In addition to this strong evidence of an agency relationship, we also find it significant that counsel for plaintiffs Morgenthow & Latham and New York International Insurance Group in this case acted as counsel for FIPM in the federal action. Since plaintiffs have never denied that FIPM was act-

ing as their attorney-in-fact and trustee in prosecuting the federal action, nor have they asserted that FIPM was not authorized to bring those claims on their behalf, we find that FIPM's admissions in the federal action are admissible against plaintiffs in this case.[2]

We have on several occasions found that prior statements or averments of parties or their agents in the course of litigation that refute an essential element of a plaintiff's present claim may constitute documentary evidence within the meaning of CPLR 3211 (a) (1) (*see Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76 [1999] [extrinsic evidence submitted by defendant including affirmations, exhibits, a settlement agreement from another action, correspondence and a complaint submitted in a previous federal action showed that plaintiff did not have a cause of action]; *IMO Indus. v Anderson Kill & Olick*, 267 AD2d 10, 11 [1999] [legal malpractice defendant's submission of excerpts of client's answer and selected prelitigation correspondence did not conclusively establish firm's defense as a matter of law]; *WFB Telecom. v NYNEX Corp.*, 188 AD2d 257, 259 [1992], *lv denied* 81 NY2d 709 [1993] [CPLR 3211 motion granted where defendant submitted letter from plaintiffs' counsel which flatly contradicted plaintiffs' current allegations of prima facie tort]). It is clear, therefore, that the IAS court properly relied upon FIPM's allegations in the federal action as documentary evidence under CPLR 3211 (a) (1).

Having concluded that the IAS court properly considered the complaint in the federal action on the motion to dismiss, we now turn to the court's pivotal conclusion that those allegations did not "flatly contradict" plaintiffs' fraud cause of action in the instant case. In order to state a cause of action for fraud, a plaintiff must allege a misrepresentation or material omission of fact which was false and known to be false by the defendant and made for the purpose of inducing the plaintiff to rely upon it, justifiable reliance of the plaintiff on the misrepresentation or material omission, and injury (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]).

BNY's primary argument is that the allegations in the federal action fatally undermine plaintiffs' instant claim of justifiable reliance on BNY's alleged misrepresentations. As noted, the central misrepresentations alleged by plaintiffs are that

---

2. The District Court's holdings in *Pelaez* on two separate occasions that FIPM did not have standing to pursue a breach of contract action against Inkombank or a fraud claim on behalf of Inkombank's shareholders are not dispositive of its agency status.

BNY falsely misrepresented in 1996 that Inkombank was a sound, reputable and reliable financial institution that would honor its obligations and that BNY concealed from plaintiffs that Inkombank's senior management was actively engaged in unlawful and criminal activities.

However, the complaint in the federal action repeatedly alleges that plaintiff's agent, FIPM, was informed in 1994 by Inkombank's representatives that Inkombank had no intention of fulfilling its obligations on the $40 million stock purchase. The federal complaint goes on to allege that after FIPM demanded that Inkombank honor its obligations and warned that legal action would otherwise ensue, Inkombank representatives engaged in bribery attempts, threats and the murder of an FIPM principal in order to conceal their illegal activities. Additionally, although plaintiffs argue that BNY concealed Inkombank's criminal activities, the federal complaint alleged that "a renegade Russian mob controlled management faction * * * acquired and maintained control over defendant Inkombank by fraud, coercion and strong arm tactics." In light of these detailed allegations by their agent, plaintiffs are hard pressed to argue that BNY's statements in 1996 somehow rehabilitated Inkombank's reputation to the extent that they withdrew their demand to redeem their $40 million investment in Inkombank (see Harris v Camilleri, 77 AD2d 861, 862-863 [1980] [plaintiff's reliance on defendant's misrepresentations was negated on the face of the pleading]). Moreover, given the gravity of plaintiffs' decision, their reliance on BNY's status as a respected financial institution cannot, by itself, establish the reasonableness of their reliance.

Plaintiffs respond that no inconsistency exists between the fraud action and the allegations in the federal action since the latter made no mention of their redemption rights. We find this argument unavailing, as the allegations in the federal action that Inkombank admitted that it "never intended to honor [its] obligations to FIPM with respect to the $40 million stock purchase" can only be construed as an intent not to honor any obligations concerning this investment, including plaintiffs' redemption rights.

Plaintiffs further contend that their justifiable reliance is supported by a letter they received from Inkombank in 1996 that purportedly reaffirmed Inkombank's intent to honor its obligations. BNY challenges the authenticity of this letter, noting that it is not mentioned in the complaint despite its obvious significance to the question of reliance. In any event, even

if this letter can be construed as effectively "recanting" Inkombank's 1994 statements that it never intended to honor its obligations, plaintiffs' reliance on BNY's false assurances is completely undermined by their agent's ongoing litigation with Inkombank from 1995 through 1999 concerning the very same share purchase agreements. In essence, plaintiffs ask this Court to conclude that it is not inconsistent for them to justifiably rely on BNY's false assurances that Inkombank had suddenly been rehabilitated while simultaneously authorizing their agent to aggressively pursue litigation against Inkombank in the federal action for breach of the very same agreement. In our view, the inconsistency in plaintiffs' positions is manifest (*see Bankers Trustee Co. v First Mexican Acceptance Corp.*, 273 AD2d 81 [2000], *lv denied* 95 NY2d 766 [2000] [plaintiff's acknowledgment of a third party's status as subrogee in prior CPLR article 77 proceeding and federal action precludes it from now taking a contrary position under the doctrines of judicial estoppel and informal judicial admissions]).

We conclude that plaintiffs' claim of justifiable reliance is flatly contradicted by their agent's allegations in the federal action and that this contradiction requires dismissal of their fraud claim pursuant to CPLR 3211 (a) (1). In light of our determination, it is unnecessary for us to consider BNY's remaining challenges to the sufficiency of plaintiffs' fraud cause of action.

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered January 15, 2002, which denied defendants' motion pursuant to CPLR 3211 to dismiss the complaint, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

Tom, J.P., Sullivan, Ellerin and Marlow, JJ., concur.

Order, Supreme Court, New York County, entered January 15, 2002, reversed, on the law, without costs, and defendants' motion to dismiss the complaint granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.