Ling-Cohan, J.
(dissenting). I respectfully dissent as the evidence shows that the respondent landlord waived its right to enforce the lease provision limiting occupancy to the tenant and one unrelated roommate.
The unrefuted trial evidence conclusively established that landlord, or its predecessor, was aware for many years that tenant, a jazz musician of limited means, had two or more unrelated roommates residing with him in the subject four-bedroom Harlem apartment, in violation of the lease.* Indeed, the documentary evidence unequivocally demonstrates that *79 landlord accepted separate rent checks from tenant and his (two or more) unrelated roommates in April 2000; and, in 2002, tenant and three unrelated individuals then residing with him commenced a Housing Part (HP) proceeding against landlord, specifically naming each of the four individuals in the caption, as petitioners/tenants. Moreover, in such HP action, at least two of tenant’s roommates signed a consent order, above a line indicating their title as “petitioner[s]-tenant[s],” as did the landlord. Such act by the landlord in a court of law, on a legal document submitted to the court, constitutes a judicial admission, and was a definitive affirmative act of waiver, rather than a “passive acceptance,” further evidencing landlord’s knowledge (see Morgenthow & Latham v Bank of N.Y. Co., 305 AD2d 74 [1st Dept 2003]; GJF Constr., Inc. v Sirius Am. Ins. Co., 89 AD3d 622 [1st Dept 2011]). Based upon this undisputed proof, and particularly given that landlord signed a consent order with tenant’s roommates, it cannot be seriously argued that landlord was unaware that multiple unrelated individuals were residing with tenant in violation of the lease. In fact, the evidence of landlord’s knowledge could not have been clearer. It is also obvious that landlord, at best, turned a blind eye to the lease breach or, at worst, stuck its head in the sand like the proverbial ostrich and did not see the open and obvious evidence. In either situation, landlord is properly charged with knowledge (see Seward Park Hous. Corp. v Cohen, 287 AD2d 157 [1st Dept 2001]).
Moreover, given that landlord never previously objected to tenant’s breach of the lease, and, in fact, continued accepting rent from tenant for many years, landlord waived the breach. “When rent is accepted with knowledge of particular conduct which is claimed to be a default, the acceptance of such rent constitutes a waiver by landlord of the default” (Atkin’s Waste Materials v May, 34 NY2d 422, 427 [1974]). Additionally, the no-waiver provision in the lease does not preclude a finding of waiver, as it has long been the rule that parties may waive a “no-waiver” clause (see Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC, 30 AD3d 1, 6 [2006], aff'd 8 NY3d 59 [2006]). Here, landlord’s knowing acceptance of rent, with *80 knowledge of the breach, justifies the inference that landlord chose to hold tenant to the lease and waived the violation (see Lee v Wright, 108 AD2d 678 [1st Dept 1985]). Thus, the lower court’s posttrial decision, which awarded possession to landlord in this summary holdover proceeding, should be reversed and the proceeding dismissed.
Lowe, III, J.P., and Shulman, J., concur; Ling-Cohan, J., dissents in a separate opinion.

 The unrefuted testimony included that, at the time tenant first took possession of the subject apartment, he informed his original landlord that he planned to live there with roommates, that roommates in fact moved into the *79 apartment with tenant at such time, that prior landlord met his roommates on numerous occasions and accepted rent (in both cash and check) from tenant and his roommates, when landlord personally came to collect the rent each month. Indeed, it would be absurd for a landlord to rent a /bnr-bedroom apartment to a single musician of limited means, without the knowledge that the tenant would have roommates renting the other three bedrooms, so that the rental obligations would be met.