## Fair Hous. Justice Ctr., Inc. v Fairstead Mgt. LLC

2024 NY Slip Op 33325(U)

September 19, 2024

Supreme Court, New York County

Docket Number: Index No. 952363/2023

Judge: Richard G. Latin

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. RICHARD G. LATIN** | **PART** 46M |
| | *Justice* | |

-----------------------------------------------------------------------------------X

FAIR HOUSING JUSTICE CENTER, INC.,JANE DOE,

Plaintiff,

- v -

FAIRSTEAD MANAGEMENT LLC,HP SAVOY PARK II HOUSING DEVELOPMENT FUND COMPANY INC.,NEW SAVOY PARK PORTFOLIO LLC,BOHEMIA REALTY GROUP LLC,511 W173 LLC,COLTOWN PROPERTIES LLC,609 WEST ASSOCIATES, L.P., BEACH LANE MANAGEMENT, INC.,TONY WRIGHT, LAUREN BERGEN, KATHERINE KOCIK, MICHAEL MACHEMER, DANIEL EDMUND, SHELLY BROWN, CAITLYN SANTANDER

Defendant.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 952363/2023 |
| **MOTION DATE** | 01/15/2024, 02/15/2024 |
| **MOTION SEQ. NO.** | 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41

were read on this motion to/for                    DISMISSAL                    .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 60, 61, 62

were read on this motion to/for                    DISMISSAL                    .

Upon the foregoing documents for the reasons spread across the record at oral argument,

it is ordered that defendants 609 West Associates, LP and Beach Lane Management, Inc.'s motion

to dismiss and defendants Bohemia Realty Group, LLC, Lauren Bergen, Katherine Kocik, Michael

Machemer, Daniel Edmund, Shelly Brown, and Caitlyn Santander (the "Bohemia Defendants")'s

motion to dismiss are denied.

## **Background**

Plaintiff Jane Doe is a domestic violence survivor who remained at a domestic violence

shelter with her toddler (NYSCEF # 1 ¶ 2). Doe has no current income (*id.*). "Through the FHEPS

program, she has a voucher that will pay 100% of her rent for a one-bedroom apartment up to

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No.  002 003**

**Page 1 of 18**

1 of 18

$2387 per month ($2184 per month if utilities are not included)" (*id.*). On August and September 2023, Doe applied through the Bohemia Defendants for two apartments at 609 West 196th Street, Apartment 1J and 511 West 173rd Street, Apartment 1A in Manhattan (*id.* ¶ 36). Doe claims she was discriminated against based on the source of her income and reported this to plaintiff Fair Housing Justice Center, Inc. ("FHJC ") (*id.* ¶¶ 37,38). The FHJC received complaints about the Bohemia Defendants' practices with respect to prospective tenants with vouchers and had been investigating the Bohemia Defendants since December 2022 (*id.* ¶ 39). The FHJC also received a complaint regarding income discrimination against Savoy Park's in-house leasing department (*id.* ¶ 40). Due to these complaints, FHJC dispatched trained testers, posing as prospective tenants with vouchers and prospective tenants with income solely from employment, to test whether the Bohemia Defendants and other property owners and managers engaged in discrimination against prospective tenants with vouchers including plaintiff Doe (*id.* ¶ 41). It is noted that all calls and visits performed by FHJC testers were recorded (*id.* ¶ 42). In addition, FHJC conducted six tests of various apartments with similar rents (*id.* at 11-34).

*The First Test*

The first test involved 45 West 139th Street, Apartment 88B at the Savoy Park housing complex in Harlem that was advertised on Streeteasy.com for rent of $2,195 per month (*id.* ¶ 43). On November 17, 2022, a FHJC tester, posing as a prospective tenant with income solely for employment, called the in-house leasing office of Savoy Park and spoke to leasing agent Jennifer Maroni (*id.* ¶ 44). The FHJC tester asked for information about Apartment 88B (*id.* ¶ 45). Maroni responded she did not have access to the listing and asked what the tester was looking for (*id.* ¶ 46). The FHJC tester asked for a studio apartment up to $2,200 per month (*id.* ¶ 47). Maroni called back and left a voicemail that four apartments were available at Savoy Park within the tester's

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No.  002 003**

**Page 2 of 18**

2 of 18

price range (*id.* ¶ 50). On November 18, 2022, the tester sent an email acknowledging Maroni's voicemail and asked for more information about the available studios (*id.* ¶ 51). Maroni responded by directing the tester "to submit an application through an online portal, www.on-site.com (*id.* ¶ 52). "The tester responded by email stating that he would prefer to see the units before submitting an application" (*id.* ¶ 53). On November 22, 2002, Maroni showed the tester three apartments at Savoy Park without receiving any application from the tester (*id.* ¶¶ 54, 55).

Another tester, now posing as a prospective tenant with a voucher called the same in-house leasing office of Savoy Park and spoke to a different leasing agent named Lisa on November 22, 2022 (*id.* ¶ 61). The tester asked about Apartment 88B (*id.* ¶ 62). The agent Lisa stated there was already an application on 88B but Apartment 62B was available at the same rental rate (*id.* ¶ 63). The tester with a voucher then informed that "he would be using a Section 8 voucher" (*id.* ¶ 65). The agent responded that the rent for the unit was slightly higher than the Section 8 limit for studios, and management would not lower the rent to match it (*id.* ¶ 66). The agent also claimed Section 8 would not accept the rent if it is not within the voucher max (*id.*). The tester with a voucher responded he was allowed to contribute up to 40% of his income and was eligible for an application (*id.* ¶ 68). The agent responded "Savoy Park's management was reluctant to accept vouchers because the process often involves delays" (*id.* ¶ 69). "The agent further explained that management was "tired of losing revenue holding these units for four to five months, and then they turn around and cancel the application, they have been going through a lot with that" (*id.* ¶ 74). The agent offered to take the tester's information and promised to call when another apartment was available (*id.* ¶ 75). Later that same day, the tester with a voucher telephoned the in-house leasing office of Savoy Park and inquired about another apartment 62B (*id.* ¶ 78). The agent responded the apartment was just taken by another individual (*id.* ¶ 78). It had been less than 20

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No.  002 003**

**Page 3 of 18**

[* 3]

3 of 18

minutes since the agent confirmed Apartment 62B was still available (*id.* ¶ 79). The agent promised to reach out if any apartments within the Section 8 limit became available (*id.* ¶ 80). However, "[t]he agent never followed up with the tester with a voucher" (*id.* ¶ 83).

On November 28, 2022, the FHJC sent another tester posing as a prospective tenant who did not indicate that she would be using a voucher (*id.* ¶ 84-85). The tester also inquired about Apartment 88B (*id.* ¶ 86). The tester then corresponded to Fairstead's Leasing agent, Tony Wright (*id.* ¶ 88). On the following day of November 29, 2022, Wright informed the tester of two available apartment units (*id.* ¶ 91). On December 2, 2022, Wright showed the tester the two apartments at Savoy Park (*id.* ¶¶ 93, 94). "Wright first showed Apartment 2B at 60 West 142nd Street offered for $2,195 per month" (*id.* ¶ 95). During the showing, the tester finally indicated for the first time that she would be using a CityFHEPS voucher (*id.* ¶ 97). Wright responded that the voucher would have to cover "the entire amount" of the rent (*id.* ¶ 98). Wright then showed the tester with a voucher Apartment 8R (*id.* ¶ 99). Wright then told tester that he would follow up by email (*id.* ¶ 109). However, Wright never followed up (*id.* ¶ 111). The tester sent multiple follow up emails, but Wright never responded (*id.* ¶ 112-115).

*The Second Test*

"The second test involved 2300 Fifth Avenue, Apartment 8R, a studio apartment at the Savoy Park housing complex in Harlem that Bohemia advertised on Streeteasy.com for a rent of $2,148 per month" (*id.* ¶ 116). On December 7, 2022, a FHJC tester posing as a prospective tenant with a voucher contacted Lauren Bergen, a Bohemia agent (*id.* ¶ 117). The tester expressed interest in Apartment 8R, which Bergen responded that an application was submitted "as of last night" (*id.* ¶ 119-120). Bergen informed the tester with a voucher about two apartments with no applications pending, as well as two other studios at Savoy Park (*id.* ¶ 121). The tester with voucher expressed interest to submit an application for Apartment 8R (*id.* ¶ 125). The tester informed Bergen that he

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**                 **Page 4 of 18**
**Motion No.  002 003**

4 of 18

had a HASA voucher (*id.* ¶ 126). Bergen then responded that the "next step" would be for the tester with voucher to email the tester's voucher information (*id.* ¶ 127). The tester asked if he could see the apartment that same day, however, Bergen responded that they can "move forward with an application" once the voucher information was submitted (*id.* ¶ 129). The tester with the voucher asked whether he could apply for the apartment, which Bergen responded she would have to check the status of the application ("contradicting her prior statements that he was welcome to submit a backup application") (*id.* ¶ 130-131). Bergen explained that once Bohemia had his information, then the application can move forward (*id.* ¶ 132). After the call, Bergen "never followed up with the tester with a voucher" (*id.* ¶ 145).

On December 9, 2022, a different FHJC tester contacted Bergen (*id.* ¶ 146). In contrast to the previous tester, this tester posed as a prospective tenant with income solely from employment (*id.* ¶ 146). The tester also inquired about the same unit Apartment 8R (*id.*). Bergen responded that an application was placed "literally as of yesterday," which was the day after Bergen spoke to the tester with a voucher (*id.* ¶ 147). The tester showed interest even when there was a pending application (*id.* ¶ 150). Bergen suggested that the tester put in an application anyway and later offered to show other apartments including Apartment 8R on December 16, 2022 (*id.* ¶ 156-157). Bergen claimed Apartment 8R was "back on the market as of right now!" (*id.* ¶ 156). Throughout the whole exchange, it is not stated that the tester with income ever sent an application (*id.* ¶ 153-157). After showing the apartment, Bergen sent the tester with income a follow-up email attaching application materials (*id.* ¶ 158). "By contrast, Ms. Bergen did not ever follow up with the tester with a voucher, much less offer to show the tester with a voucher Apartment 8R, even though he had expressed interest in seeing the unit and applying for it days before the tester with income solely from employment had done so" (*id.* ¶ 160).

**952363/2023  FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL
Motion No.  002 003**

**Page 5 of 18**

5 of 18

*Third Test*

The third test involved property 620 Lenox Avenue, Apartment 6B (*id.* ¶ 161). On March 20, 2023, a FHJC tester posing as a prospective tenant with income solely from employment expressed interest for unit 6B and submitted a form (*id.* ¶ 162-163). The form required the tester to state if a housing voucher is used, which the tester indicated he was not (*id.* ¶ 164). On March 21, 2023, Bohemia agent Jennifer Diaz showed the tester with income solely from employment Apartment 6B (*id.* ¶ 169). Diaz also sent follow up emails to the tester regarding other apartments (*id.* ¶ 170).

On the same day, another tester posing as a prospective tenant using a Section 8 housing voucher inquired about Apartment 6B (*id.* ¶ 172). The tester received the same form from Bohemia and filled out the form indicating he had a Section 8 voucher (*id.* ¶ 174). The tester then received an email requiring documentation of a budget letter or voucher to move forward in the process (*id.* ¶ 175). The tester reached out to Bohemia agent Katherine Kocik and asked to see Apartment 6B (*id.* ¶ 178). Kocik responded that the tester must send over his voucher information before seeing any apartments (*id.* ¶ 184). After a series of exchanges, Kocik "never followed up with the tester with a voucher (*id.* ¶ 187).

*Fourth Test*

The fourth test involved 30 West 141st Street, Apartment 11J (*id.* ¶ 188). On March 31, 2022, a FHJC tester posing as a prospective tenant with income solely from employment expressed interest in Apartment 11J (*id.* ¶ 189). The tester received and filled out a form which he indicated he was not using a voucher (*id.* ¶ 190-191). The tester indicated he was "seeking a studio apartment above 125th Street for $2,500 per month or less and that his income was between $100,000 and $150,000 per year" (*id.* ¶ 192). On April 1, 2023, Bohemia agent Mirsen Lausten sent the tester an email that Apartment 11J was no longer available, but Apartment 12H was (*id.* ¶ 193-195). Lausten

**952363/2023  FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No.  002 003**

**Page 6 of 18**

6 of 18

showed the tester Apartment 12H (*id.* ¶ 198). Lausten later sent follow up emails about other available apartments between April 7 and April 21, 2023 (*id.* ¶ 202).

In contrast, on March 29, 2023, (two days before the tester with income solely from employment expressed interest in Apartment 11J), another FHJC tester posing as a prospective tenant with a voucher expressed interest in Apartment 11J (*id.* ¶ 203). The tester with voucher later provided his income and credit score to Bohemia agent, Michael Machemer (*id.* ¶ 206). Machemer informed the tester that the unit had been rented in February (*id.* ¶ 211). The tester messaged if other apartments were available, which Machemer did not respond (*id.* ¶ 213-215).

*Fifth Test*

The fifth test involved 15 West 139th Street, Apartment 6C (*id.* ¶ 216). On April 24, 2023, a FHJC tester posing as a prospective tenant with income solely from employment expressed interest in Apartment 6C to Bohemia agent, Daniel Edmund (*id.* ¶ 217). On April 25, 2023, Edmund responded that the unit was no longer available but offered to show other similar apartments (*id.* ¶ 218). "Mr. Edmund made considerable efforts to try to show the tester with income solely from employment units at Savoy Park, and he also tried to get her interest in seeing units in other buildings" (*id.* ¶ 224).

"Meanwhile, also on April 24, 2023, a FHJC tester posing as a prospective tenant with a voucher expressed interest in the same unit 15 West 139th Street, Apartment 6C by also contacting Mr. Edmund" (*id.* ¶ 225). Edmund confirmed Apartment 6C was available (*id.* ¶ 227). The tester did not reveal he was a tenant with a voucher (*id.*). However, the tester with voucher later revealed she would be using a voucher stating "I make 31,000 per year and have a section 8 voucher for $2,387 for a 1 bedroom" (*id.* ¶ 230). Edmund told the tester that there are other voucher applicants interested and the unit for $2,395 would not be available until after May 1, 2023 (*id.* ¶ 231-233).

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT**   **Page 7 of 18**
**LLC ET AL**
**Motion No.  002 003**

7 of 18

The tester attempted to contact Edmund multiple times, however, Edmund did not respond (*id.* ¶ 234-242).

*Sixth Test*

The sixth test involved the FHJC's response to Plaintiff Doe's complaint regarding 511 West 173rd Street, Apartment 1A, which was supposedly not available due to an "internal transfer" (*id.* ¶ 314). On October 4, 2023, a FHJC tester posing as a prospective tenant with voucher expressed interest in Apartment 1A (*id.* ¶ 315). Bohemia agent Hannah responded Apartment 1A was still available, but the application was not yet approved (*id.* ¶ 316). "Upon information and belief, the applicant that Hanna referred to was Ms. Doe" (*id.* ¶ 317). The tester was not given the opportunity to view apartments until filling out the proper forms within Bohemia's system (*id.* ¶318-325).

On October 4, 2023, another FHJC tester posing as a prospective tenant with income solely from employment expressed interest in Apartment 1A (*id.* ¶ 326). The tester corresponded with Bohemia agent Chad who scheduled a showing of the apartment without the same procedures required to tenants with vouchers (*id.* ¶ 327-333). On October 5, 2023, Bohemia agent Shelly Brown showed the tester the apartment (*id.* ¶ 333). Shelly Brown told the tester that a previous "applicant had been denied because it involved a "program"" (supposedly Ms. Doe) (*id.* ¶ 338-339). Just like in the other tests, an agent followed up with the tester with income solely based on employment, unlike with testers with vouchers (*id.* ¶ 349-350).

**Current Proceedings**

On November 17, 2023, plaintiffs commenced this action alleging violations of the New York City Human Rights Law ("NYCHRL") and New York State Executive Law, both under source of income discrimination (*id.* at 53-57). Plaintiffs allege that "[o]wner/Manager Defendants

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No.  002 003**

**Page 8 of 18**

8 of 18

explicitly or tacitly communicated to Bohemia that the Owner/Manager Defendants preferred prospective tenants with traditional sources of income" as opposed to tenants with vouchers (*id.* ¶ 381). Plaintiffs aver that all the defendants have a "policy and practice of refusing to rent available apartments to prospective tenants with vouchers because of their lawful source of income" (*id.* ¶ 382). Furthermore, plaintiffs claim that prospective tenants with vouchers undergo a "special application" process that provides a substantial disadvantage compared to applicant tenants with income solely from employment (*id.* ¶ 383). Plaintiffs claim this disparate treatment against prospective tenants with vouchers was "purposeful" and the defendants' conduct was "willful and wanton" (*id.* ¶ 387, 391). Plaintiffs cite to HRL § 8-102(25), which protects individuals of "lawful source of income" and includes Section 8, FHEPS, CityFHEPS, and HASA vouchers (*id.* ¶ 376-377). Plaintiffs further claim that the defendants fall under the violations of HRL (*id.* ¶ 378). HRL §§ 8-107(5)(a)(1) and (5)(c)(1) prohibit landlords, property managers, and brokers from refusing to rent an apartment to a prospective tenant because of "any lawful source of income" (*id.*). Moreover, "[p]laintiffs are "aggrieved persons" under NYC Admin Code § 8-502(a) (*id.* ¶ 379). Plaintiffs also cite to New York Executive Law § 292(36), which encompasses "lawful source of income" and includes Section 8, FHEPS, CityFHEPS, and HASA vouchers like the HRL (*id.* ¶ 395-396).

Through motion sequences #002 and #003, the movants seek to dismiss plaintiffs' complaint (NYSCEF # 20; NYSCEF # 42). Defendants 609 West Associates, L.P. ("609") and Beach Lane Management ("Beach Lane"), (motion sequence #002), aver plaintiff Doe's application was lawfully denied based on the information provided in the application including a credit check (NYSCEF # 22 ¶ 4).

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No.  002 003**

**Page 9 of 18**

9 of 18

[* 9]

The Bohemia Defendants (motion sequence #003), aver that the plaintiffs lack standing to sue, fail to state a claim, and documentary evidence refutes their claim (NYSCEF # 56 at 14).

## Discussion

On a CPLR § 3211(a)(7) motion to dismiss, the court must afford the pleadings a liberal construction, accept the allegations of the complaint as true and provide the plaintiff with "the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]). "[W]hether a plaintiff ... can ultimately establish its allegations is not taken into consideration in determining a motion to dismiss" (*African Diaspora Mar. Corp. v Golden Gate Yacht Club*, 109 AD3d 204, 211 [1st Dept 2013]).

"However, factual allegations presumed to be true on a motion pursuant to CPLR 3211 may properly be negated by affidavits and documentary evidence" (F*acebook, Inc. v DLA Piper LLP (US)*, 134 AD3d 610, 613 [1st Dept 2015]). A motion to dismiss pursuant to CPLR 3211(a)(1) may be granted "only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Morgenthow & Latham v Bank of N.Y. Co., Inc.*, 305 AD2d 74, 78 [1st Dept 2003]). And where "legal conclusions and factual allegations [in the complaint] are flatly contradicted by documentary evidence, they are not presumed to be true or accorded every favorable inference" (*id.* [internal citations and quotations omitted]).

### 609 and Beach Lane

Defendant "609 runs credit checks on all applicants for apartments *except* for those with a 100% subsidy such as participants in the FHEPS program (except for CityFHEPS, which does not pay 100% of the rent)" (NYSCEF # 22 ¶ 4). 609 argues that the application submitted by Kocik indicated Doe had a "CityFHEPS housing voucher which covers up to $2,275" (*id.* ¶ 5). 609 asserts

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT**          **Page 10 of 18**
**LLC ET AL**
**Motion No.  002 003**

10 of 18

CityFHEPS housing vouchers indicate a tenant contribution, and the "subsidy will not pay 100% of the rent" (*id.* ¶ 6). Thus, because there is a tenant contribution with a CityFHCP voucher, 609 conducted a credit check on Doe (*id.*). In turn, 609 found Doe's credit report unsatisfactory and issued a denial letter (*id.*). 609 further claims that Kocik "never submitted a corrected or amended application and never communicated with Defendants regarding the denial" (*id.* ¶ 8). 609 asserts that no discrimination or violation was involved; 609 simply followed procedures based on the application containing a CityFHCP voucher (*id.* ¶ 9). The denial of Doe's application was based on error from Kocik (*id.*).

Plaintiffs respond and cite to *Olivierre* that "where a voucher pays the entirety of a tenant's rent and there is no tenant's share, it is discriminatory and unlawful for a landlord to refuse to rent to the tenant on the basis of alleged credit issues" (*Olivierre v Parkchester Preserv. Co., L.P.*, 2022 N.Y. Slip Op. 34471[U], 6 [N.Y. Sup Ct, New York County 2022]). Plaintiffs assert 609 and Beach Lane "expressly concede this critical point" (NYSCEF # 28 ¶ 36). Plaintiffs claim Doe's application expressly states she "does not owe a tenant share of the payment standard and the program pays the entire rent payment" (*id.* ¶ 37, citing NYSCEF # 24). Plaintiffs argue 609's claim that Doe's application had a CityFHEPS voucher with a tenant share is false (*id.* ¶ 38). Plaintiffs also claim "both FHEPS and CityFHEPS programs sometimes impose a tenant share: when the tenant has income at the time of the voucher application" (*id.* ¶ 39). In addition, plaintiffs state that Doe has no income, thus no tenant share under the program (*id.*). Plaintiffs also aver Doe's application "appended her voucher, which made clear on its face that it is a FHEPS voucher, not a CityFHEPS voucher (*id.* ¶ 40). The court agrees with Plaintiffs.

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL
Motion No.  002 003**

**Page 11 of 18**

11 of 18

[* 11]

Here, Defendants claim that if the application properly stated FHEPS assistance, rather than CityFHEP assistance (as stated in Doe's application), then "Defendants would not have run a credit check" based on that knowledge (NYSCEF # 22 at 9). However, Defendants were on sufficient notice that Plaintiff Doe's application did not require a tenant share (NYSCEF # 24 at 1). Doe's application by Ms. Kocik expressly states Doe "does not owe a tenant share of the payment standard and the program pays the entire rent payment monthly" (*id.*). Based on statements offered in the application, Defendants were provided sufficient notice that no credit check was required.

Accordingly, 609 and Beach Lane's motion to dismiss is denied.

**Bohemia Defendants**

*Standing / Organization Standing*

To have standing, the plaintiff must have (1) an injury in fact, (2) causality, and (3) redressability (*see Lujan v Defs. of Wildlife*, 504 US 555, 560-61, 112 S Ct 2130, 2136, 119 L Ed 2d 351 [1992]). An injury in fact is characterized as an invasion of a legally protected interest which is concrete and particularized, and it must be actual and imminent (not conjectural) (*id.*). The plaintiff must establish a "casual connection between the injury and the conducted complained of" (*id.*). In addition, it must be likely, not merely speculative that the injury would be redressed by a favorable decision (*id.*).

An organization may establish standing through "associational standing" asserting a claim on behalf of its members if at "least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (*Mental Hygiene Legal Serv. v Daniels*, 33 NY3d 44, 51 [2019], quoting *New York State Ass'n of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]).

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**                    **Page 12 of 18**
**Motion No.  002 003**

12 of 18

Additionally, an organization may demonstrate "standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy" (*Mental Hygiene Legal Serv.*, 33 NY3d at 51, quoting *Warth v Seldin*, 422 US 490, 511 [1975]). Through this method, the organization must show it has suffered an injury in fact and that its harm falls "within the "zone of interests" sought to be protected by the statutory provision under which the government agency has acted" (*id.*).

Here the Bohemia Defendants aver that neither plaintiffs have standing (NYSCEF # 56 at 18). They claim FHJC fails to meet the requirements of organizational standing because "none of FHJC's members are part of this protected class" and FHJC does not claim to provide client services to its members (*id.*). In addition, the Bohemia Defendants assert that neither plaintiffs can demonstrate a "concrete and demonstrable injury" (*id.*). In particular, they allege that Doe did not suffer from an injury in fact because the Bohemia Defendants "assisted Plaintiff in getting approved for an apartment before Plaintiffs filed this action render her claim moot" (*id.* at 20, citing NYSCEF # 46). Thus, because Doe was able to acquire housing, Doe does not have a standing (*id.*).

In opposition, FHJC differentiates between associational standing and organizational standing (*id.* at 12). FHJC argues organizational standing is met because "the organization itself directly sustains its own injury by devoting resources investigating and challenging the alleged unlawful practice" (*id.*, quoting *L.C. v LeFrak Org., Inc.*, 987 F Supp 2d 391, 397 [SDNY 2013]. Thus, because FHJC alleged that it allocated resources to investigate potential misconduct and unlawful activity, FHJC sufficiently meets organizational standing (*id.*).

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No.  002 003**

**Page 13 of 18**

13 of 18

[* 13]

In addition, plaintiff Doe responds she has standing (*id.* at 15). Although Doe acknowledges she ultimately received housing, she asserts the Bohemia Defendants' argument ignores the complaint's "detailed allegations that Bohemia Defendants subjected Ms. Doe and her daughter to unlawful discrimination months earlier, and that as a result of that discrimination, they remained in a homeless shelter for months longer than they should have been there" (*id.* at 15-16). Furthermore, Doe states she had not moved for an injunction, but rather is seeking monetary damages (*id.* at 17). The court finds standing for both plaintiffs.

Although FHJC does "not have individual standing to bring this action, it nevertheless has organizational standing" to assert its client's rights on the rationale that "those whom the statute seeks to protect ... will not seek judicial intervention and, thus, a remedy" (*Mental Hygiene Legal Serv.*, 33 NY3d at 49). FHJC sufficiently meets the requirements of organization standing (NYSCEF # 56 at 18-19). Bohemia Defendants fail to consider *L.C.*, which the court considered the exact same question on whether FHJC has standing (*see L.C.*, 987 F Supp 2d at 397). In *L.C.*, the court found the pleading which alleged "it expended staff time and other resources to investigate and respond to Defendants' discriminatory rental practices, which diverted resources away from other FHJC activities" was sufficient to plead injury-in-fact for organizational standing (*id.*). Here, FHJC alleges similar arguments, which the complaint states "FHJC expended significant staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources away from other FHJC activities" (NYSCEF # 1 ¶ 367). Accordingly, FHJC has standing to bring this action (NYSCEF # 1 ¶ 366-368; *L.C.*, 987 F Supp 2d at 397-98).

Moreover, plaintiff Doe has standing (*see Lujan*, 504 US at 560-561). While Doe did acquire housing in the end, it is not the ultimate result but the overall process to acquire housing

**952363/2023  FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**                                                  **Page 14 of 18**
**Motion No.  002 003**

14 of 18

which potentially lends to injury and standing for Doe (NYSCEF # 58 at 15-16). Doe alleges that she suffered an injury in fact which was concrete, particularized, and actual, which was the result of the alleged discrimination against Doe for months; this caused Doe to remain at a homeless shelter for a longer period of time (*id.*). Furthermore, causality is sufficiently alleged, which *but for* defendants' discrimination, Doe would have acquired housing at a faster period of time (*id.*). Lastly, the redressability prong is met because Doe is not seeking an injunction but rather, she is seeking money damages that would redress the injury by monetary means (*id.* At 17).

*Failure to State a Cause of Action of Discrimination Under NYSHRL and NYCHRL*

The Bohemia Defendants assert that the plaintiffs failed to state a claim for housing discrimination under NYSHRL and NYCHRL (NYSCEF # 56 at 21). They aver that they have "never refused to rent, lease, sell, and did not deny any applications proffered by the "testers" for the available units" (*id.* at 22). In addition, they claim they never refused to work with any prospective voucher client, and they could not conduct a review on the tester with vouchers because the vouchers did not exist (*id.*). Movants further support this claim because it is "undisputed that the 'testers' never applied for any apartments," therefore the Bohemia Defendants could not have discriminated based on not receiving any application submissions (*id.*). They also claim that they had no involvement in whether the applications were accepted (*id.*). In addition, Defendants assert that plaintiff Doe does not have a claim because the Bohemia Defendants assisted Doe in finding and renting an apartment (*id.*).

Plaintiffs respond that the complaint properly alleges cognizable claims (NYSCEF # 58 at 17). Plaintiffs assert § 296(5)(a)(2) broadly prohibits any and all discrimination (*id.* at 17-18). NYCHRL § 8-107(5)(a)(1)(b) similarly contains broad language making clear that any source of income discrimination is unlawful (*id.* at 18). In sum, plaintiffs argue the statutes are "not limited

**952363/2023  FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No. 002 003**

**Page 15 of 18**

15 of 18

[* 15]

narrowly to the decision whether to accept or reject an application for a unit" (*id.*). In reply, the Bohemia Defendants vehemently assert "they did not and never have discriminated against Plaintiffs or their testers" (NYSCEF # 62 at 11). Furthermore, they state "Plaintiff's entire opposition is based on the unsupported fact that Plaintiffs were discriminated against by reason of delay" (*id.*).

Here, plaintiffs sufficiently state a claim for discrimination (NYSCEF # 1 at 53-57). In addition to claims for housing discrimination, the complaint provides information regarding the multiple tests conducted by FHJC comparing prospective tenants with vouchers and tenants paying solely from income (*id.* at 10-52). At this stage, on a motion to dismiss, there is an inference that the plaintiffs and FHJC's testers suffered discrimination based on income (*see Leon*, 84 NY2d at 87; NYSCEF # 1 at 53-57). The complaint provides information and compares treatment between prospective tenants with vouchers and tenants paying solely by income (NYSCEF # 1 at 53-57). Aside from plaintiff Doe's treatment, the FHJC conducted tests on multiple properties with its testers (*id.*). There are sufficient differences in treatment between the two tester groups (*id.*). For example, prospective tenants with vouchers encounter more requirements such as filling out an application prior to viewing an apartment (*id.*). In addition, the Bohemia Defendants' agents appear not to follow up with housing opportunities to prospective tenants with vouchers as opposed to tenants paying solely by income (*id.*). Accordingly, not only does plaintiffs sufficiently allege and state claims, but also show an inference of discrimination based on conduct to testers posing as prospective tenants with vouchers and Plaintiff Jane Doe (*id.*).

*Documentary Evidence*

The Bohemia Defendants aver plaintiff Doe's "lease and approval notice dated November 1, 2023 are unambiguous documentary evidence rendering her claims moot" (NYSCEF # 56 at 23,

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL**
**Motion No.  002 003**

**Page 16 of 18**

16 of 18

[* 16]

citing NYSCEF # 46). The Bohemia Defendants assert Doe was approved and has since moved into an apartment (*id.*, citing NYSCEF # 55). In addition, they assert that Beach Lane's application denial "broke any alleged causation chain between Plaintiff's claims against Bohemia Defendants" (*id.* at 24). Thus, the Bohemia Defendants argue the rental application with the FHEPS voucher properly qualifies as unambiguous documentary evidence (*id.*).

Plaintiffs respond that the movants are not entitled to judgement as a matter of law at the pleading stage based on documentary evidence (NYSCEF # 58 at 21). Plaintiffs argue discovery will "show that it was FHJC's counsel that persuaded Ms. Doe's new landlord to allow her to move in, not Bohemia" (*id.* at 21). Furthermore, plaintiffs assert the complaint "overwhelmingly alleges" that the Bohemia Defendants put plaintiff Doe into an inferior and slow housing process (*id.*). Plaintiffs also aver the Bohemia Defendants are also responsible for plaintiff Doe's harm and "actively participated in the landlord's source of income discrimination against Ms. Doe and actively helped the landlord search for a tenant who was not using a voucher" (*id.*). Plaintiffs also attack the Bohemia Defendants' argument on proximate cause (*id.* at 22). Plaintiffs claim that Defendants' argument

> "ignores that the Bohemia Defendants' liability encompasses their discrimination with respect to the entire rental process, not just the ultimate denial of rental applications; that the Complaint alleges a stark pattern of widespread discrimination against tenants with vouchers beginning at the first point of contact; that the Complaint alleges their complicity in and active assistance with landlords' discrimination; and that Plaintiffs have asserted viable agency, aiding and abetting, and disparate impact theories" (*id.*).

Essentially, plaintiffs aver even though the Bohemia Defendants were not directly involved in the application process, they can still be liable based on indirect avenues of participation (*id.*).

**952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL
Motion No.  002 003**

Page 17 of 18

17 of 18

Defendants' submission of plaintiff Doe's lease and approval notice dated November 1, 2023 and plaintiff Doe's move in date do not completely rebut the claim of delay and damages (NYSCEF # 56 at 23; NYSCEF # 46; NYSCEF # 55). Doe alleges housing discrimination and delay based on her income, and she attributes her hardship to defendants' "segregated system," which the documentary evidence fails to refute (NYSCEF # 58 at 21, quoting *Short v Manhattan Apartments, Inc.*, 916 F Supp 2d 375, 392 [SDNY 2012]). Furthermore, Doe is seeking damages and not an injunction for housing discrimination (NYSCEF # 58 at 22). Therefore, defendants' moot argument is unavailing (*id.*).

Next, the Bohemia Defendants' argument that Beach Lane's actions "broke any causation chain between plaintiff Doe's claims against the Bohemia Defendants" is also unpersuasive (NYSCEF # 56 at 24). Defendant's Exhibit H, showing Beach Lane's application denial because of an improper credit check, does not sufficiently refute the Bohemia Defendants' involvement in the entire rental process (NYSCEF # 56 at 24; NYSCEF # 58 at 22). Furthermore, the documentary evidence does not sufficiently refute the Bohemia Defendants' knowledge or implicit consent of the alleged discriminatory practice (NYSCEF # 1).

Accordingly, all movants' motions to dismiss plaintiffs' complaint are denied; and it is further

ORDERED that plaintiffs shall serve a copy of this order, with notice of entry, on defendants within 15 days of its upload onto NYSCEF.

| 9/19/2024 | | | | RICHARD G. LATIN, J.S.C. |
| DATE | | | | |

CHECK ONE:

| | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |

APPLICATION:

| | SETTLE ORDER | | SUBMIT ORDER |

CHECK IF APPROPRIATE:

| | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

952363/2023   FAIR HOUSING JUSTICE CENTER, INC. ET AL vs. FAIRSTEAD MANAGEMENT LLC ET AL
Motion No. 002 003

Page 18 of 18

[* 18]

18 of 18